Howard NELSON, Jr., Respondent,

v.

Evelyn I. NELSON, Appellant.

No. WD 37384.

Missouri Court of Appeals, Western District.

Dec. 9, 1986.

---

Catherine P. Logan, Kansas City, for appellant.

Michael J. Albano, John W. Dennis, Jr., Paden, Welch, Martin, Albano and Graeff, Independence, for respondent.

Before SHANGLER, P.J., and DIXON and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

The marriage of Howard Nelson and Evelyn Nelson, contracted in 1949, severed by divorce and then recontracted in 1957, was dissolved in 1985. The pleadings of the principals acknowledge that the marriage was irretrievably broken. The two children born to them were by then emancipated. The court set apart to the wife certain nonmarital property, and then divided to the spouses the marital property. The value of the property divided to the husband, as recited and found in the judgment, was $203,908.58, and to the wife— $164,606.84. The court awarded the wife an attorney fee of $7,697.00, and maintenance in gross in these terms:

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Petitioner [husband] shall pay Respondent [wife] as maintenance-in-gross the sum of $49,-500.00, payable in installments of $1,500.00 per month, with the first such payment to be due on the 1st day of June, 1985 and on the same date each month thereafter until fully paid, *same to terminate earlier in the event of the death of either party or remarriage of Respondent [husband]. [emphasis added]*

The wife appeals and asserts as error that (1) the statutes do not allow a court to order that a maintenance in gross award terminate at the death of either spouse or the remarriage of the obligee spouse, and (2) that the self-sufficiency of the wife was not a foreseeable event, and hence the award should have been for indeterminate maintenance as well as for the sum in gross.

The couple married when he was 27 years of age, and she, 23. The husband was 62 at the time of the dissolution, and the wife, 58. At the time of the marriage, the husband was a student at the school of dentistry at Howard University in Washington, D.C., and the wife, who had already earned an undergraduate degree from Howard, was employed. The tuition for dental school was paid for by a governmental benefit, but the husband nevertheless worked part-time to supplement that aid. The wife worked full-time until the husband completed dental school in 1954—except for a period of pregnancy. When the governmental aid to the husband was depleted, the wife's mother assumed the care of the child so that the wife could resume employment to support the family. Upon graduation from the professional school in 1954, the husband went to California to seek licensure, and then to Texas, where he found a position as a dentist. They divorced in 1957, and remarried within the year. In that interim, the wife earned a master's degree in education and taught school in St. Louis. A second child was born to the remarriage, they removed to Kansas City, and the husband established a successful dental practice. The wife taught in the public schools from the remarriage in 1957 to 1977. The couple attained, and practiced, a comfortable mode of life.

The husband was a sole practitioner for twenty years, until 1979, when he formed a professional corporation—the Nelson-Wren Dental Associates, Inc.—in partnership with another dentist. The wife performed some financial services for the professional corporation and also kept the family books. In 1977, the wife retired from teaching to attend law school, completed the course, but did not pass the Missouri bar examination after two attempts. There was evidence to explain that the failure was due in part to a malady, later diagnosed as carpal tunnel syndrome, which affected the use of both of her hands. That condition was later treated surgically. There was evidence also that the wife suffered from

osteoarthritis to her hands, and also from a species of rheumatoid arthritis. She then attempted a clothes business, but was unsuccessful. She then went to work, but without salary, in the office of her sister and daughter, both lawyers. She discontinued that occupation in 1983, shortly before the surgery to her hands.

The suit for dissolution was the initiative of the husband. He acknowledges that both spouses contributed to the accumulation of assets, and that an equal division of the marital property would be equitable. The husband contests any award for maintenance. It was his expectation to retire at age 65—thirty-three months from the time of the hearing. The husband enjoyed a gross income of $6,000 per month from the professional corporation, which reduced to $3,693.83 per month in net terms. The wife removed to Washington, D.C., at the separation, and lived with a sister. She was employed there as a lobbyist for six months at $1,200 per month, and the continuation of that work relationship depended upon her success during that trial period. It was her objective to seek licensure to practice law in Virginia, but had not yet taken the bar examination since she did not yet reside there.

An asset of the marriage was the pension and profit sharing plans established by the Nelson-Wren professional corporation. That property was divided equally—$102,291.85 to each spouse—by the judgment. The normal retirement age under the terms of the plans is 65 years. The husband attains that age in February of 1988, and the benefits are then payable. The maintenance payments ordered by the court extend over 33 months—the period from the date of the judgment of dissolution, June of 1985, until the 65th birthday of the husband, February of 1988. The wife, by that date, will be 60 years of age and can draw on the asset without penalty—since the benefit accrues to her at age 59½ (an age already attained in October of 1986). There was evidence that $100,000 of the retirement asset used then by the wife to purchase an annuity would yield to her $20,500 per annum over her life expectancy of 22.5 years.

The spouses accede to the terms of judgment, except for the award of maintenance. At the trial, the wife requested an award of $2,000 per month for maintenance until she passed the Virginia bar and obtained employment as an attorney. The award of the court was, as we note, a gross sum of $49,500, payable in installments of $1,500 per month [that is, for 33 months], unless terminated earlier by the death of either spouse or the remarriage of the wife. On appeal, the wife contends that the strictures of prior death or remarriage the award imposes as terms of judgment are not valid in law. She contends also that only an award for indefinite, modifiable maintenance, as well as the definite [in gross], unmodifiable maintenance, may be properly entered under the evidence. The husband does not contest the award of gross maintenance as entered.

The court rendered neither findings of fact nor conclusions of law, therefore the judgment does not articulate the statutory ground for the order of maintenance as formulated and entered. The spouses accede that the award was designated, and designed, as maintenance in gross. The wife argues, however, that the stricture the award imposes—that it terminate upon the remarriage of the wife or death of either party—contradicts the statute law as well as the essential attributes of such a judgment. A decree of maintenance in gross, the wife argues, is empowered by §§ 452.080 and 452.335, RSMo 1978. Our decisions under these statutes, she says, attribute two distinctive characteristics to a maintenance in gross judgment: such an award is not subject to modification, and vests in favor of the obligee. That is to say, such an award is reviewable only by direct appeal, and constitutes an obligation which survives the death or remarriage of the obligee spouse, and constitutes a general lien against the realty of the obligor spouse. Thus, she concludes, the terms of an award of maintenance in gross which impose contingencies upon full payment

deny to a spouse the unimpaired benefit these statutes sanction.

The enactment of the Dissolution of Marriage Act in 1974 worked an essential repeal of the predecessor Divorce Law, except for intermittent sections. Section 452.080 of the Divorce Law remained intact. It provided then, as now:

> Upon a decree of divorce in favor of the wife, the court may, in its discretion, decree alimony in gross or from year to year. When alimony is decreed in gross, such decree shall be a general lien on the realty of the party against whom the decree may be rendered, as in the case of other judgments.

A decree of divorce, and hence of alimony, issues under § 452.080, but only to a wife—an innocent and injured wife. *Adkins v. Adkins*, 325 S.W.2d 364, 367[2–4] (Mo.App.1959). A decree of dissolution under new §§ 452.300 and 452.310 issues not on fault, but on a marriage irretrievably broken, and maintenance issues to a spouse under § 452.335—wife or husband—although neither innocent nor injured.[1] *Schnitker v. Schnitker*, 646 S.W.2d 123, 125[2] (Mo.App.1983). It is that anomaly between the virtual no-fault premise of the new enactment and the anachronistic vestige of the fault premise of retained § 452.080 which prompted our supreme court in *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983), to comment that the nonrepeal of § 452.080 was "inexplicable." *Id.* at 800, n. 3. The court completed the comment with the declaration that, although § 452.080 "remains as authority to award *alimony in gross*," since "under § 452.080, an award of periodic alimony or alimony in gross may only be made to the wife and then only if she is the injured and innocent party," it would be "a rare situation in which this section would

ever be utilized." *Id.* It is explicit in *Doerflinger* that § 452.080 is defunct as a basis to adjudicate maintenance, and that such an award—whether in the form of periodic maintenance of indefinite duration or as maintenance in gross—rests on § 452.335. *Id.*

The pre-*Doerflinger* treatments of maintenance under the new Dissolution of Marriage Act not only give § 452.080 equal authority with § 452.335 as the ground for an award of maintenance, but also interpolate § 452.335 through § 452.080, as judicially construed for *alimony*. The early case, *D.E.W. v. M.W.*, 552 S.W.2d 280 (Mo. App.1977), presented the court the questions: whether an award of maintenance in gross was authorized under the new Dissolution of Marriage Act and, if so, whether such an award was subject to modification. That case decided that such an award was properly granted under § 452.335 and that it was not subject to modification. The opinion validated maintenance in gross under § 452.335, not only because "the words [of that provision] do not preclude an interpretation authorizing a gross award," but also on the analogy that unrepealed § 452.-080 "specifically authorize[s] *alimony* in gross." *Id.* at 282–283 [emphasis added]. The opinion went on to explain the attributes of maintenance in gross, characteristics which rendered such an award "especially appropriate" in that case: Such an award was not only "not modifiable by a court," but also,

> "[u]nlike periodic payments, a gross award is a lien on the payor's property, § 452.080, RSMo 1969, and survives the payee-wife's death or remarriage. *Swanson v. Swanson*, 464 S.W.2d 225, 228 (Mo.1971)."

*Id.* at 283[4]. That early paradigm has become the orthodoxy.[2]

---

**1.** The noninnocent conduct of a spouse during the marriage does not defeat a claim for maintenance under new § 452.335, but is a "relevant factor" under subsection 2(7) of that statute to determine the just amount and period of time for such an award. *In re Marriage of Carmack,* 550 S.W.2d 815, 820 (Mo.App.1977).

**2.** A number of court of appeals decisions, either as rationale for decision, or as dictum, or as near dictum cite—and even after *Doerflinger* continue to cite—*D.E.W. v. M.W.* for the efficacy of *alimony* § 452.080 as a ground for the award of *maintenance* under the Dissolution of Marriage Act. These cases also continue to interpolate § 452.335 through the judicial constructions

The wife Nelson cites *D.E.W. v. M.W.* and cases of that color to argue that a court may not qualify an award of maintenance in gross under the Dissolution of Marriage Act by a provision that the obligation to pay terminate upon the death of either of the spouses or the remarriage of the obligee spouse. That argument, however, slights the *Doerflinger* rationale that an award of *maintenance* under the Dissolution of Marriage Act rests on § 452.335 free of the text of *alimony* § 452.080—and hence also of the judicial decisions which give that alimony provision effect.

*Doerflinger* expresses the insight that alimony in gross and maintenance in gross are incidents of disparate systems of marriage dissolution. One rests on the premise of fault, and the other on the premise of virtual no-fault. Thus, the purposes § 452.080 and § 452.335 subserve are neither compatible nor read as *in pari materia.* Alimony under the discarded fault practice was an award of damages to the innocent wife injured by the breach of the marriage contract by the husband. The measure of that damage was the support lost to her by his breach. Alimony under that practice, therefore, was the equivalent of the obligation to support the wife under the marriage contract, and its rendition fully discharged the contract as to *both*—the husband and wife. The award of alimony relieved the husband from any duty to support the wife after the dissolution of the marriage. Alimony was, in short, compensation for the loss of support, and not an award for support. That analysis is rendered, incisively and clearly, by our supreme court en banc in *Nelson v. Nelson,* 282 Mo. 412, 418, 221 S.W. 1066, 1067[3] (banc 1920).[3] *See also* Ruhland, *Maintenance and Support,* 29 Mo.B.J. 516 (1973); Note, *Spousal Maintenance in Missouri: The Old and the New,* 41 Mo.L.Rev. 570 (1976).

It was as a judgment for money damages, therefore, that an alimony award issued under § 452.080, either in gross or from year to year,

> "and as it is in its essence compensation awarded in redress of a legal injury, it must be held on principle that the wife has therein, as she would have in any other money judgment rendered in her favor, a property right which vests as [it] accrue[s]."

222 Mo. at 423, 221 S.W. at 1069[8]. An alimony award vested as a property right to a wife obligee under *Nelson* and under § 452.080, therefore, because as any other judgment for money, it was expressed as an unconditional debt of a definite sum, and *capable of immediate enforcement* —as to the whole obligation if rendered in gross, or as to the installments due, if rendered in periods. *Taylor v. Taylor,* 367 S.W.2d 58, 62 (Mo.App.1963); *Remmers v. Wolf's Estate,* 206 Mo.App. 159, 226 S.W. 290, 292[2] (1920). It is the quality of alimony under § 452.080 as a debt for money, accrued—and hence amenable to enforcement and entitled to full faith and credit—which invests the judgment as a right of property, and so survives the death or remarriage of the wife. *Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); *Taylor v. Taylor,* 367 S.W.2d at 62[6, 7]; *Vitale v. Duerback,* 338 Mo. 556, 92 S.W.2d 691, 696[10] (1935). That a judg-

---

of § 452.080 to give effect to the *D.E.W. v. M.W.* declaration that it is an immutable quality of an obligation for maintenance in gross under the Dissolution of Marriage Act to survive the death or remarriage of the payee-spouse. *See Leitz v. Moore,* 703 S.W.2d 54, 56[4–6] (Mo.App.1986); *Brown v. Brown,* 673 S.W.2d 113, 116[2, 3] (Mo. App.1984); *Mottel v. Mottel,* 664 S.W.2d 25, 27 (Mo.App.1984); *Gunkel v. Gunkel,* 633 S.W.2d 108, 109[1–3] (Mo.App.1982).

**3.** Alimony under § 452.080 issued from year to year as well as in gross. That form of the judgment, as the court en banc explained in

*Nelson v. Nelson,* 282 Mo. at 422, 221 S.W. at 1069, "d[id] not militate against the idea that it [was] essentially compensation. If the husband has no property, his future earning capacity must be utilized to meet his obligation." Nor did the fact that the unaccrued installments could be modified contradict the nature of the award as compensation. That procedure "merely affords the opportunity from time to time as new conditions arise to more exactly determine the extent of the loss suffered by the wife." 282 Mo. at 422, 221 S.W. at 1069.

ment for alimony in gross survives the death or remarriage of an obligee-wife under § 452.080, therefore, is determined as much by the law of judgments as by the nature of the remedy the statute enables and requires.

Maintenance issues under § 452.335 of the Dissolution of Marriage Act, however, not as damages for an injury from the fault of the husband during the marriage,[4] but on the *need for reasonable support* by one spouse from the other *after* the disruption of the marriage:

452.335. *Maintenance order—findings required for.—*

1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

   (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

   (2) Is unable to support himself through appropriate employment....

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors....

Thus as the text of the statute discloses, maintenance issues for support and *only* for support—and then, until the dependent spouse achieves a reasonable self-sufficiency. *Lampe v. Lampe*, 689 S.W.2d 768, 769[4] (Mo.App.1985). That the maintenance continues to a spouse only until the need and dependency for support remain is a theme the decisions repeat. *Sansone v. Sansone*, 615 S.W.2d 670 (Mo.App.1981);

*Pederson v. Pederson*, 599 S.W.2d 51, 54 (Mo.App.1980); *Raines v. Raines*, 583 S.W.2d 564, 567[2–5] (Mo.App.1979). Maintenance issues not to redress a past injury, therefore, but for support after the entry of judgment.

The text of subsection 2 of § 452.335 ["the maintenance order shall be in such amounts and for such periods of time as the court deems just"] authorizes an award of "maintenance for an indefinite term, maintenance for a limited period and maintenance in gross." *Doerflinger v. Doerflinger*, 646 S.W.2d at 800. The gross award may issue as "a lump sum payment or the product of periodic payments due to expire on a predetermined date." *Id.* at 801. [The gross award under our review is of the latter ilk.] In either form, a characteristic of maintenance in gross under § 452.335 [as under § 452.080] is that such an award is not subject to modification. The wife on appeal insists that an award for maintenance in gross under § 452.335 bears the characteristic also [as under § 452.080] of a right of property accrued and vested—even to installments not yet due—and may not issue with a condition of termination as to those installments.

That argument supposes that an award of money in gross from one spouse to the other as an incident of the marriage dissolution functions as an accrued and unconditional judgment capable of immediate enforcement, whatever the cause of action it adjudicates, or the necessity of the statute which enables it, or the form in which the judgment issues. The argument supposes even more: that the character of the *alimony in gross* award under the discarded

**4.** Our supreme court en banc in *Heilman v. Heilman*, 700 S.W.2d 843 (1985) expressly discountenances the occasional trial court practice of "characterizing payments in lieu of property as 'maintenance.'" The court rejected the notion that an award of "lump-sum maintenance in gross" function as the means "to equalize the division of property." *Id.* at 845.

The wife contends here that the award to her of maintenance in gross of $49,500 payable at $1500 per month was intended to equalize the property division which apportioned to the husband net assets of $203,908.58 and to the wife, $164,606.84. The stricture the award imposes:

that the payment of installments terminate upon the remarriage of the wife or the death of either of them, rather, manifests an intention that the wife shall not receive the benefit of the full gross award should either of those conditions eventuate, and hence contradicts an intention that the $49,500 was adjudged as an award of property. Moreover, the $49,500 the maintenance in gross renders does not result in that exact "equal division of property" the wife contends is its intended function. Rather, it rewards the wife with $10,000 more than allotted to the husband by the property division.

practice determines the character of the *maintenance in gross* award under the present practice. "[A]wards of maintenance in gross derive their origin in Section 452.335." *Doerflinger v. Doerflinger,* 646 S.W.2d at 801. The concept of maintenance in the Dissolution of Marriage Act, as *Doerflinger* discerns, rests on a logic and purpose "in [no] way dependent on the provisions of [alimony] Section 452.080." *Id.* at 800, n. 3. Alimony under § 452.080 issued only "in gross or from year to year." The amalgam § 452.335 recognizes of maintenance in gross payable in installments was not practiced under alimony § 452.080—and for good reason. An alimony in gross decree under that statute became "a general lien on the realty" of the husband. A lien under the law of judgments operates only on an award of alimony "for a definite and certain sum of money, and will authorize the present issuance of an execution for its enforcement." *Hagemann v. Pinska,* 225 Mo.App. 521, 37 S.W.2d 463, 465 (1931). That is to say, the lien operated only on an accrued money judgment.[5] Thus, alimony § 452.080 bears neither as a relevant precedent nor as an analogous theory.

Nor does the appeal pose the question the wife puts insistently: whether a maintenance in gross award may issue subject to termination upon condition. An award of maintenance in gross in a definite amount payable upon entry of judgment [just as any other such money award] accrues immediately upon rendition, is capable of enforcement by execution, and so vests as a right of property in the obligee which a future event does not divest. *Taylor v. Taylor,* 367 S.W.2d at 62; *Pflanz v. Pflanz,* 237 Mo.App. 873, 177 S.W.2d 631, 634[2–4] (1944). A condition that such a judgment terminate at the remarriage or death of the obligee would be nonsense, since the judgment already vested at rendition.

The question the appeal poses, rather, is: whether under the Dissolution of Marriage Act an award of maintenance in gross *payable in installments* may validly issue on condition of termination upon the remarriage of the obligee spouse or the death of either of them. And since a property right vests in favor of an obligee of a money judgment payable in installments, as to the installments accrued [*Nelson v. Nelson,* 222 Mo. at 423, 221 S.W. at 1069[8]; *Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910)], the question, more precisely, is: whether under § 452.370.2 of the Act an award of maintenance in gross payable in installments may validly issue upon condition of termination on remarriage or death—*as to the installments yet to accrue.*

Section 452.370, subsection 2 of the Act provides:

> Unless otherwise agreed in writing or expressly provided in the decree, *the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.* [emphasis added]

That section speaks in terms of *future statutory maintenance,* and not in terms of future maintenance for an indefinite term or future maintenance in gross. Nor does that section speak in terms of maintenance in gross payable at once, or of maintenance in gross payable in installments. An award of maintenance adjudicates a dependency, and the form of the award adjudicates the nature of the dependency, and its probable duration. A gross award adjudicates the want of necessity "of the dependent spouse for indefinite continuation of support and ... decree[s] instead the payment of limited sum during a period

---

**5.** A judgment for alimony payable by installments for an indefinite period ["from year to year"] under § 452.080 was not secured by a lien, since the money sum was too uncertain and the period of payment too indefinite to ascertain "the amount of the lien for purposes of payment and discharge." *Hagemann v. Pins-*

*ka,* 225 Mo.App. at 527, 37 S.W.2d at 465. Any lien upon such a judgment attached to the real estate, not from the general judgment of "year to year" alimony, but from the installments already accrued—and hence from a judgment ready for execution. 225 Mo.App. at 527, 37 S.W.2d at 465.

of readjustment." *Doerflinger v. Doerflinger,* 646 S.W.2d at 801. A gross award payable in one sum adjudicates that the full sum is necessary immediately for the "readjustment" from dependency to self-sufficiency—and therefore [on principles of money judgments] should not be divested by death or remarriage. A gross award payable in installments adjudicates that the full sum is not immediately necessary to the "readjustment," and hence [on cognate principles of money judgments] allows for the termination of the support as to the unaccrued installments when the dependency ends earlier by death or remarriage.

It is evident that *the obligation to pay future statutory maintenance* term of § 452.370.2 is meant to be understood in terms of maintenance § 452.335. The temper of that statute, as we note, is that support shall not continue beyond the actual dependency. It issues *in such amounts and for such periods of time* as will accomplish that singular purpose. § 452.-335.2. A spouse since dead needs no continued support in order to live, and a spouse since remarried has a replenished source of support. In terms of the purpose of maintenance within the integral Dissolution of Marriage Act, therefore, *the obligation to pay future statutory maintenance* can only mean reasonably that the death or remarriage of a dependent spouse terminates the obligation of the other spouse to pay the installments—whether of an indefinite award or of a gross award—not yet due and accrued. An award of maintenance in gross payable in installments issues under the authority of § 452.-335, and not of § 452.080, and so is imbued with the purposes of § 452.335, and not of § 452.080. The award to the wife of maintenance in gross payable in installments with the condition that the obligation terminate in the event of the death of either spouse or the remarriage of the wife merely makes express what the statute imposes by operation of law.

The operation of subsection 2 of § 452.-370 upon awards in gross under maintenance § 452.335 has been given infrequent attention. The usual disposition of an issue whether the remarriage or death of a maintenance in gross obligee lapsed the obligation to pay ignored § 452.370.2 altogether. The issue was simply dispatched by reference to the declaration in *D.E.W. v. M.W.,* 552 S.W.2d 280 (Mo.App.1977), at 283[4] that

a gross award is a lien on the payor's property, § 452.080, and survives the payee-wife's death or remarriage.

As our discussion shows, that rationale, very early—and aberrantly—insinuated the § 452.080 alimony concept [and terminology] into the new and virtually fault-free scheme for spousal support under § 452.-335. [*See* cases cited in n. 2] That rationale, as applied to awards of maintenance in gross in installments, moreover, was even more mistaken since that practice was neither sanctioned under alimony § 452.-080, nor compatible with the attribute of lien that statute imparts to a judgment for alimony in gross: a judgment "for the payment of a definite and certain sum of money, capable of collection by execution against the debtor's property." *Hagemann v. Pinska,* 225 Mo.App. at 527, 37 S.W.2d at 4654[2].

Two decisions have confronted the text of subsection 2 of § 452.370—that, absent written agreement or express decree—the obligation to pay future statutory maintenance terminates upon the death of either spouse or the remarriage of the obligee spouse. They continue to implicate § 452.-080 to determine that subsection 2 of § 452.370 does not appertain to maintenance in gross—nor, presumably, to installments not yet accrued. *See Mottel v. Mottel,* 664 S.W.2d 25 (Mo.App.1984) and *Leitz v. Moore,* 703 S.W.2d 54 (Mo.App.1986).

In *Mottel* the agreement of the spouses that the husband pay the wife "as maintenance the sum of Four Hundred Dollars per month for forty eight months" was set forth in the decree. The wife remarried and the husband contended that under § 452.370.2 the obligation to pay future installments of maintenance terminated by the remarriage event. The court cited the

*Doerflinger* holding that " 'a decree ordering periodic maintenance payments which will cease on a designated future date is the equivalent of a lump sum award [and] [n]either is subject to modification on a change of circumstances but can be reviewed only by appeal of the original judgment.' " *Id.* at 27. The court then also cited *D.E.W. v. M.W.*, 552 S.W.2d 280 (Mo. App.1977) to conclude: "Maintenance in gross cannot be modified and survives the payee's remarriage." That does not follow from *Doerflinger*, however, or from the text or purpose of the Dissolution of Marriage Act. *Doerflinger* decided only that a maintenance award in a definite amount, whether payable at once or over time is not a subject of a motion to modify, but is a final judgment for purpose of review. That such a judgment—even when payable in installments—cannot be modified does not decide whether the installments not yet accrued can be rendered to terminate upon the death or remarriage of the judgment creditor. To conclude, as does *Mottel*, that a maintenance in gross award [6] survives the remarriage of the obligee under the Dissolution of Marriage Act because such an award cannot be modified simply begs the issue presented there for decision: whether under § 452.370.2 of the Act the obligation for *future* statutory maintenance—the installments not yet due—terminates upon the remarriage. *Mottel* merely assumes that a "maintenance in gross" award and all the future installments, vest under § 452.335 at the rendition of judgment because it is not subject to modification. *Mottel* does so, it is evident by the reliance on *D.E.W. v. M.W.*, on the authority of text and judicial constructions of alimony § 452.080.

As our discussion shows, a judgment for money vests not because it is not subject to modification, but because of the terms of its rendition—as a definite sum, fully accrued, and amenable to immediate execution for satisfaction. The terms of rendition, in turn, depend upon the statute which enables the judgment. An alimony award under § 452.080 could issue in gross or from year to year, but not as an amalgam of both. An alimony award under § 452.-080 necessarily vested at rendition because it came as an award of money payable at once, and so amenable to immediate execution. It issued in that form to give effect to the lien § 452.080 conferred as a concomitant of an alimony in gross award. That right of property was not subject to divestment by remarriage as were the unaccrued installments of indefinite [from year to year] alimony under § 452.075.[7] An award for maintenance in a definite sum under § 452.335, however, may issue either as a single payment or in installments. It is only the installments already accrued which vest, according to the law of money judgments, and it is only that obligation to pay future maintenance that 452.-370.2 affects. Thus, the statute impairs no vested right, but rather advances the purpose of the Dissolution of Marriage Act that maintenance issue for support, and for a need still subsistent. Thus, also, the award for limited maintenance to the wife on this appeal, payable in installments, to terminate earlier upon her remarriage or the death of either, is a valid adjudication under the Dissolution of Marriage Act.

*Leitz* appears to follow *Mottel* to decide that subsection 2 of § 452.370 does not operate as an award of maintenance in gross, and for the same reason *Mottel* as-

**6.** The *in gross* terminology, imposed by the text of alimony § 452.080, is not adopted by maintenance § 452.335 or by the other new sections of the Dissolution of Marriage Act. *Doerflinger* (except as a response in terms) shuns the *in gross* jargon of the defunct alimony § 452.080 and the conceptual impedimenta it suggests.

**7.** Section 452.075, a cognate of § 452.080, like § 452.080 was not repealed by the Dissolution of Marriage Act, and quite as inexplicably. That section also speaks in terms of "divorce" and

"alimony," and provides that the remarriage of the wife shall "relieve the former husband from further payment of alimony to the former wife." It is only as to the installments not yet accrued, however, that the statute operates. The installments due at the time of remarriage are vested, and hence, on principles of public policy and due process, are not subject to the effect of § 452.075. *See Nelson v. Nelson,* 282 Mo. at 425, 221 S.W. at 1070[9].

cribes: because maintenance in gross is not subject to modification. *Leitz*, however, dealt with a provision of a separation agreement, incorporated into the dissolution decree, for the payment by the husband to the wife of $270 per month to be used as monthly payments on an automobile indebtedness. That term was denominated *maintenance* in the agreement, and another term agreed that *maintenance* should not terminate upon remarriage. The wife remarried and the husband contended that the obligation for maintenance ceased on that event under both alimony § 452.075 and maintenance § 452.370.2. It is evident from the very text of the opinion that subsection 2 of § 452.370 did not appertain to the judgment, not because that subsection does not operate on awards of maintenance in gross, but because the judgment, whatever the designation of the term of agreement, was not for maintenance, but for the division of the marital property. "[T]he inescapable intention of the parties was not to provide support to the wife, but to provide for the payment of a marital debt." 703 S.W.2d at 57. Subsection 2 did not apply for the other reason that the terms of that statute excuse from its ambit agreements in writing that the obligation to pay future statutory maintenance shall not terminate upon the remarriage of the obligee spouse. *Leitz* does not decide, authoritatively, therefore, that unaccrued installments of maintenance in gross are not governed by subsection 2 of § 452.370. Only *Mottel* tenders that decision, a decision mistaken because distracted by the § 452.080 alimony rationale..

■ The wife contends another point on appeal: that the denial of indefinite maintenance of $500 per month, in addition to the gross award of $49,500 payable in 33 installments of $1500 per month, was error. The denial of such an award expressed that the trial court rejected any necessity of the wife for "indefinite continuation of support and has decreed instead the payment of limited sum during a period of readjustment." *Doerflinger v. Doerflinger*, 646 S.W.2d at 801. Since the review of such an order is under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), the question becomes whether substantial evidence sustains the judgment. The evidence does support the determination that the readjustment of the wife would not extend beyond 33 months, and hence that self-sufficiency would displace dependency by then. The wife is a law school graduate, and although unsuccessful at attempts for licensure, that eventual course of gainful profession remains open to her. She was, in any event, a secondary school teacher with broad experience, holds a master's degree in education, and fully suited to that work. While she prefers the law, the alternative of employment as a teacher is immediate. Although she suffers physical ailments, she wants to work, is able to work, and in fact, at the time of the dissolution proceedings worked as a lobbyist in Washington, D.C.

The property division functions, moreover, so that by October of 1986, the $102,291.86 pension and profit-sharing asset set over to the wife is available for draw and distribution to her. Thus, by now, the wife has the benefit of the use of that asset. There was testimony, moreover, that $100,000 of those funds, invested in an annuity would yield to her $20,500 annually over her expected life. The evidence sustains the denial of indefinite maintenance. That order rests on the projection that the dependency of the wife would end within thirty-three months, and that the maintenance in gross award—both in amount and in form—was best suited to meet that interim need for support. It was a reasonable determination. *Sansone v. Sansone*, 615 S.W.2d 670, 671 (Mo.App.1981).

The judgment is affirmed.

All concur.