**Steven Paul MIKA, Appellant,**

v.

**Deborah Ann MIKA, Respondent.**

**No. 49897.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer
Denied March 25, 1987.

Application to Transfer Denied
May 19, 1987.

Hal B. Coleman and Leigh H. Greenhaw, Clayton, for appellant.

Michael J. Coleman, St. Louis, for respondent.

SATZ, Judge.

Husband appeals from a dissolution decree. He attacks the division of property, the award of maintenance and the attorney's fees. We affirm.

In this court tried case, we defer to the trial court's determinations of credibility, *e.g., Davis v. Davis*, 693 S.W.2d 879, 881–

882 (Mo.App.1985), and we affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Id.* at 881.

The husband and wife married in March, 1978 and separated in April, 1983. Two children were born of the marriage: Steven, born on October 16, 1979 and Christopher, born on July 8, 1981. The wife worked as a nurse prior to the marriage but has not worked outside the home since the birth of Steven. The husband is a produce broker.

The trial court found 600 shares of stock in BLR Properties, Inc. to be marital property. The husband contends the record shows these shares are his separate property. On the present record, the trial court is correct.

At the time of trial, the husband had 900 shares of stock in BLR Properties, Inc. listed in his name. He admitted that 300 of the shares were acquired after the marriage and were marital property. The ownership of the remaining 600 shares is at issue.

■ As claimant to the 600 shares of stock, the husband has the burden of proving the shares were his. *See generally, Horn v. Owens,* 171 S.W.2d 585, 591 (Mo. 1943) (burden of proof is upon the party asserting the affirmative of an issue). The procedural steps essential to this proof are generally defined by statute, § 452.330 RSMo. (Supp.1984)[1] and are fleshed out by case law. Generally, property acquired before marriage and titled in the purchaser's own name is separate property. § 452.-330.1; *Boyce v. Boyce,* 694 S.W.2d 288, 290 (Mo.App.1985). However, the dissolution statutes also create a legal presumption that property "acquired" subsequent to the marriage is marital property. § 452.330.3. The statutes also expressly list statutory exceptions to this presumption § 452.330.-2(1)–(5); for example, "property acquired in exchange for property acquired prior to the marriage" is separate property. § 452.-

330.2(2). Naturally, the spouse seeking to rebut the statutory presumption of marital property carries the burden of proof. § 452.330.3; *McDowell v. McDowell,* 670 S.W.2d 518, 523 (Mo.App.1984); *Fields v. Fields,* 643 S.W.2d 611, 614 (Mo.App.1982). Additionally, if property is acquired prior to the marriage by loan, the property becomes marital property to the extent marital funds are used to pay off the loan. *See Hoffman v. Hoffman,* 676 S.W.2d 817, 824 (Mo.banc 1984).

■ In the present case, the husband attempted to carry his burden of proving the 600 shares were his separate property by relying on his testimony alone. However, at best, his testimony was evasive, equivocal and contradictory. At trial, the husband said he received the 600 shares in exchange for his interest in a farm which he purchased prior to the marriage. Apparently, this was an attempt to show the stock was received in exchange for his "separate property," i.e., his interest in the farm. If true, the exchange would have changed only the form of the property but not its character as "separate property". § 452.330.2(2). However, he could not recall when the exchange occurred. He first said the exchange occurred prior to the marriage. Later, he said he could not remember whether the exchange took place prior to or after the marriage. This equivocation fails to show the exchange occurred prior to the marriage.

Then, at trial, he said he could not remember whether he used borrowed money or his own money to pay for his interest in the farm. In his deposition taken before the trial, he was just as equivocal. He said he "either paid cash or borrowed" the money to pay for this interest. In addition, he could not remember when he purchased his interest in the farm, nor could he remember what he paid for it. He "hazard[ed] a guess" the purchase occurred about 1976, and the price for his interest was "$8,000, $10,000 possibly." He also said he was "paying off a note [on the borrowed money] so much a month." "The note", he said, "was approximately a hundred dollars

---

**1.** All statutory references are to RSMo. (Supp. 1984) unless otherwise stated.

[?], but BLR Properties bought the note out so I didn't pay anything". However, he could not remember the date BLR "bought the note out" nor could he remember which bank, if any, was payee or holder of the note.

This testimony proves nothing more than the husband was an evasive, contradictory and equivocal witness. It certainly falls short of showing his interest in the farm was "acquired" as his separate property prior to his marriage. The farm may have been paid for with borrowed money or without borrowed money. If he paid for his interest with borrowed money, he did not show the debt was paid off prior to his marriage, and, if he paid off the debt during the marriage, there is no showing the debt was paid off with non-marital funds. Quite simply, the husband failed to show his interest in the farm was his separate property, and, thus, in turn, failed to show the shares of stock were his separate property. *See Boyce v. Boyce*, 694 S.W.2d at 291; *McDowell v. McDowell*, 670 S.W.2d at 523. We, therefore, find no reason to set aside the trial court's finding that the 600 shares of stock were marital property.[2]

The husband next contends the disproportionate division of property in favor of the wife is not supported by the record. We disagree.

The trial court divided the property as follows:

Husband was awarded:

| | |
|---|---|
| 900 Shares BLR Properties | 32,000.00 |
| Metropolitan Life Insurance Policy | 2,285.32 |
| American United Life Insurance Policy | 1.035.20 |
| Pension Profit Sharing Plan | 12,500.00 |
| Rock Hill Partnership Interest | 52,900.00 |
| Furnishings in his apartment | 5,179.48 |
| IRA account | 4,500.00 |
| Gustine Partnership Interest | 32,500.00 |
| | 142,900.00 |

Debt
| | |
|---|---|
| Second deed of trust on marital Property | 30,000.00 |
| Gustine Partnership | 30,000.00 |
| Cash Award to Wife | 50,000.00 |
| | 110,000.00 |
| | = 33,220.00 |

Wife was awarded:
| | |
|---|---|
| Furnishings in Marital Home[3] | 25,500.00 |
| Marital Residence | 210,000.00 |
| Interest in Condominium | 20,000.00 |
| 1979 Jeep | 1,500.00 |
| Cash award | 50,000.00 |
| | 307,000.00 |

Debt
| | |
|---|---|
| Marital Residence Encumbered by First Deed of Trust | 133,000.00 |
| | = 174,000.00 [4] |

The wife received 84% of the property and husband received 16%, obviously, unequal portions. Equal division of property, however, is not required by statute, *E.g., Fields v. Fields*, 643 S.W.2d 611, 617 (Mo. App.1982), and disproportionate divisions are routinely affirmed. *Schwarz v. Schwarz*, 631 S.W.2d 694, 695 (Mo.App. 1982) 87%–13%; *Scott v. Scott*, 645 S.W.2d 193, 195 (Mo.App.1982) 79%–21%; *Stamme v. Stamme*, 589 S.W.2d 50, 53 (Mo.App. 1979) 84%–16%; *In Re Marriage of Burris*, 557 S.W.2d 917, 918 (Mo.App.1977) 88%–12%. *But see In Re Marriage of East*, 708 S.W.2d 777, 782 (Mo.App.1986) 86%–14%.

■ Here, the property division is supported by statutorily approved factors. The economic circumstances of the parties support the division of the property. § 452.330.1(3). Economic circumstances include each party's individual capacity to work and earn. *In re Marriage of Harri-*

**2.** The trial court found the farm property was "financed" and "marital earnings were utilized to retire the debt on [the] farm", and, therefore, concluded the 600 shares received in exchange for the farm property, were marital property. The court did not set out the operative facts which it may have credited to support its findings and conclusion. We are solely concerned, however, with the conclusion reached, not the way the trial court reached it. *Walker v. Walker*, 631 S.W.2d 68, 71 (Mo.App.1982). Therefore, we do not reverse a correct conclusion which may have been reached for the wrong reasons. *Id.*

**3.** The trial court failed to expressly value the "furnishings" awarded each party. The value of these "furnishings" expressed in the opinion were calculated by subtracting the court's expressed value of all other property from the court's expressed value of the total award.

**4.** The court stated the wife was awarded $124,-000.00. This figure fails to include the $50,-000.00 cash award.

*son,* 657 S.W.2d 366, 370 (Mo.App.1983). At the time of trial, the husband was earning a yearly gross salary and commissions of $119,998, and the two years preceding the trial he averaged gross salary and commissions of $121,217.50 per year. The wife stopped working at the husband's request shortly after the marriage. She was awarded custody of the parties' two minor children. She is currently unemployed. She would be required to take courses to be able to work again as a nurse.

■ Another factor to be considered is the balance between income and non-income producing property. § 452.330.1(2); *Calia v. Calia,* 624 S.W.2d 870, 872–873 (Mo.App.1981); *Arp v. Arp,* 572 S.W.2d 232, 235 (Mo.App.1978). The husband was awarded all the income producing property. The 900 shares of stock awarded to the husband were part of that income producing property. The wife received no income producing property. The balance struck here was well within the trial court's discretion. *Calia v. Calia supra; Arp v. Arp, supra.* Moreover, to remedy the disparity between income and non-income producing property, the trial court may include a cash award to the party receiving the non-income producing property. *Calia v. Calia, supra* at 873, and, the cash award need not be linked to any particular asset. *Norman v. Norman,* 604 S.W.2d 680, 685 (Mo.App.1980). Thus, the $50,000.00 cash award to the wife in the present case is justifiable.

It is also proper for the court to examine the need or desirability of awarding the family home to the spouse having custody of the children. § 452.330.1(3). The wife, having custody of the children, was awarded the marital home. The award of the home to the custodial parent simply reflects an appropriate reluctance to uproot the custodial parent and children by requiring its sale. *Scott v. Scott,* 645 S.W.2d 193, 195 (Mo.App.1982). The high value of the home, as compared to the value of the other marital assets, is another explanation and justification for the instant unequal, but just, property division. *See Brown v. Brown,* 664 S.W.2d 268, 269 (Mo.App.1984).

■ Finally, we find the court properly considered the husband's misconduct subsequent to the legal separation. See § 452.330.2(4); *Dardick v. Dardick,* 670 S.W.2d 865, 870 (Mo.banc 1984). Post-separation misconduct is a relevant factor where the misconduct imposes additional burdens or hardships on the other party. *See Anderson v. Anderson,* 656 S.W.2d 826, 828 (Mo.App.1983). Here, the husband spent $3500 on another woman during a post-separation affair. This is an unacceptable use of marital funds and, thus, an improper burden on the wife. *In re Marriage of Cornell,* 550 S.W.2d 823, 827 (Mo. App.1977). This misconduct of the husband was a relevant factor, and its weight or probative value is properly determined by the trial court. *Id.*

The husband also contends the award of maintenance was an abuse of discretion. We disagree.

■ The trial court has broad discretion in awarding spousal maintenance. *E.g., Oldfield v. Oldfield,* 688 S.W.2d 778, 782 (Mo.App.1985). The court here simply gave due consideration to statutorily enumerated factors. § 452.335. *E.g., Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo.banc 1983). The trial court awarded the wife maintenance of $2450 a month, limited to a period of ten years. This was well within the trial court's discretion. *See Davis v. Davis,* 693 S.W.2d 879, 882–83 (Mo.App.1985); *Sarandos v. Sarandos,* 643 S.W.2d 854, 857 (Mo.App.1982).

The award is consistent with the lifestyles and earning capacities as described by both parties. The wife testified her expenses were $7000 a month. This amount included a $1850 monthly mortgage payment on the marital home awarded to her. The husband's gross salary and commissions approximate $9700 a month. In addition, the wife has limited work experience and a strong desire to stay home to raise her small children. She worked as a nurse for a short time prior to marriage but has not worked since the birth of their first child. She is still licensed as a nurse, but to be requalified she must take additional courses. Moreover, she would have to accept rotating shift assignments making it difficult to take care of her two small children, one of whom is in counseling.

In addition, we do not find the trial court abused its discretion in granting the limited maintenance award. A trial court may limit maintenance where there is a reasonable expectation of an impending change in the circumstances or financial conditions of the parties. *In re Marriage of Runez*, 666 S.W.2d 430, 433 (Mo.App.1983); *Royal v. Royal*, 617 S.W.2d 615, 619 (Mo.App.1981). In ten years, both children will be in high school, obviating the need for the wife to stay at home. And the ten years give the wife an adequate opportunity to acquire the training necessary to be recertified as a nurse.

The husband also attacks the maintenance award on the ground the language of the decree is inconsistent. The husband argues the term "decretal maintenance" used in the trial court's award signifies a modifiable award but the set payment period of ten years makes the award nonmodifiable. He therefore contends the award should at least be limited by the contingencies of the wife's remarriage or death. This argument is without merit.

The trial court awarded the wife periodic maintenance payments of $2,450.00 a month for the next ten years. This type of an award is the equivalent of a lump sum award or an award in gross and is nonmodifiable. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 801 (Mo.banc 1983); *See also, Hutchins v. Hutchins*, 687 S.W.2d 703, 706 (Mo.App.1985). The award also survives remarriage or death. *See D.E.W. v. M.W.*, 552 S.W.2d 280, 283 (Mo. App.1977). The trial court's intent is clear. The award is limited to a ten year period. The use of the word "decretal", while unfortunate, merely signified periodic installments of the total award instead of a lump sum due all at once for the benefit of both parties. The award need not be further limited as the husband desires.

The husband also argues the tax consequences of such an award are unduly burdensome. While tax consequences are a factor to be taken into consideration, the burden of showing adverse tax consequences must be established with particularity at trial if they are to be considered on appeal. *See In re Marriage of Harrison*, 657 S.W.2d 366, 371 (Mo.App.1983). The husband did not raise the issue at trial and, thus, cannot now raise it on appeal. *Id.*

Finally, the husband attacks the award of attorney's fees to the wife and the assessment of the cost of the wife's expert against him. The total award was $13,490.00.

The trial court is granted broad discretion in awarding attorney's fees. § 452.355. The court must consider all relevant factors, including the resources of both parties. *See, e.g. Hoffman v. Hoffman*, 676 S.W.2d 817, 828 (Mo.banc 1984). The details of these relevant factors have previously been set out in other contexts. We find the amount of the total award to be supported by the record. Consequently, the husband has not shown the award to be an abuse of discretion. *See e.g., Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo.banc 1979).

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.