Rochelle M. CATES, Plaintiff–Appellant,

v.

Larry D. CATES, Defendant–
Respondent.

No. 73368.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1991.

Stephen L. Shepard, Springfield, for plaintiff-appellant.

Rob J. Aiken, Springfield, for defendant-respondent.

ROBERTSON, Chief Justice.

Here we consider whether the remarriage of a former spouse terminates an obligation to pay the remaining monthly installments of a lump sum maintenance award when the decree of dissolution and the separation agreement are silent on that issue. The trial court sustained the husband's Motion to Quash Garnishment, holding that the wife's remarriage terminates the husband's obligation to continue payment. The Court of Appeals, Southern District, affirmed. We granted transfer to resolve the conflict that appears throughout appellate decisions, of which the southern district's opinion in this case and *Mika v. Mika*, 728 S.W.2d 280 (Mo.App.1987), are representative. We have jurisdiction. Mo. Const. art. V, § 10. The cause is remanded for further proceedings consistent with this opinion.

### I.

The Circuit Court of Greene County dissolved the marriage of Larry and Rochelle Cates on May 24, 1988. The trial court's decree found "[t]here is a necessity to award maintenance in gross to Petitioner

[Rochelle], in the amount of Seven Thousand Eight Hundred ($7,800) Dollars, payable at the rate of Three Hundred Twenty Five ($325) Dollars per month ... as more specifically set out in the Property Settlement and Separation Agreement" and ordered Larry to pay accordingly. The decree approved and incorporated the Property Settlement and Separation Agreement (separation agreement), finding that agreement "fair and not unconscionable."

The separation agreement stated in pertinent part:

> 5. *Maintenance.* Husband acknowledges certain obligations to Wife that have arisen from the marital relationship, and the parties, after giving due consideration to all relevant factors for the award of maintenance, including those set forth in RSMo. 453.335, the difference in earning power between them, the need for maintenance and the benefits that would have accrued to Wife from the continuation of the marriage, agree that the Wife is entitled to maintenance. Accordingly, Husband shall pay to Wife, as maintenance in gross, the sum of Seven Thousand Eight Hundred ($7,800.00) Dollars, payable at the rate of Three Hundred Twenty Five ($325.00) Dollars per month....

> \* \* \* \* \* \*

> The parties acknowledge that the above described maintenance provisions are intended to constitute "alimony" within the meaning of Section 71(a) of the Internal Revenue Code of 1954 ... thus constituting gross income to Wife and a deductible expense to Husband....

> \* \* \* \* \* \*

> This support obligation is not related to the division of property and is not intended in any way to constitute a form of payment for any rights or interests of the Wife.

> The maintenance hereinbefore provided shall be deemed contractual in nature, not subject to modification by the Court and subject to modification by the parties in writing.

Rochelle remarried on June 1, 1989. Larry stopped his monthly maintenance payments. Rochelle attempted to garnish Larry's earnings. Larry filed a Motion to Quash Garnishment, which the trial court sustained. This appeal followed.

## II.

### A.

*Mika v. Mika,* 728 S.W.2d 280, 285 (Mo. App.1987), holds that monthly payments made pursuant to a maintenance in gross award are not terminated on the remarriage of the receiving spouse:

> The trial court awarded the wife periodic maintenance payments of $2,450.00 a month for the next ten years. This type of award is the equivalent of a lump sum award or an award in gross and is nonmodifiable. [Citations omitted.] *The award also survives remarriage or death.*

[Emphasis added.] In *Nelson v. Nelson,* 720 S.W.2d 947 (Mo.App.1986) (*Nelson II*), the court considered whether an award of maintenance in gross payable in installments *may* terminate on death or remarriage. The court said:

> It is evident that *the obligation to pay future statutory maintenance* term of § 452.370.2 is meant to be understood in terms of maintenance § 452.335. The temper of that statute, as we note, is that support shall not continue beyond actual dependency.... In terms of the purpose of maintenance within the Dissolution of Marriage Act, therefore, *the obligation to pay future statutory maintenance* can only mean reasonably that the death or remarriage of a dependent spouse terminates the obligation of the other spouse to pay the installments....

*Id.* at 954. [Emphasis in original.] The southern district relied on *Nelson II* in reaching its decision in this case.

It would serve little purpose to lay out the various decisions of the court of appeals on the issue presented in this case. The cases tend to turn on their individual factual idiosyncracies. For our purposes, it

is sufficient to acknowledge that the courts have not spoken uniformly on this issue, and *Mika* and *Nelson II* are representative of the conflict between the cases.

### B.

Dissolution of marriage is a statutory action, unknown to the common law. The statutes relating to dissolution of marriage, Sections 452.300–.420, RSMo 1986, thus dictate the nature of the action, its breadth, the authority of the parties to agree, or the court to order, property settlement and support obligations and the manner in which decrees and agreements entered under the statute will be interpreted.

Specifically relevant to this case, Section 452.325, RSMo 1986, authorizes separation agreements. Section 452.335, RSMo 1986, outlines the factors that a court must consider before awarding a spouse maintenance. These factors form the basis of a trial court's determination of the conscionability of maintenance in a separation agreement. Section 452.370.2, RSMo 1986,[1] creates a rebuttable presumption that the obligation to pay statutory maintenance terminates upon the remarriage of the receiving party or the death of either party.

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

The statutory presumption is rebutted by an agreement in writing that the obligation to pay statutory maintenance extends beyond remarriage or death. The presumption is also rebutted by a decree of dissolution expressly extending the obligation to pay future statutory maintenance beyond the death of either party or the remarriage of the receiving party.

In order to determine whether Larry's maintenance obligation in this case extends beyond Rochelle's remarriage, the first consideration is whether the maintenance award here is *statutory* maintenance. If so, the inquiry moves to consider whether monthly payments, not yet due on the maintenance award, are *future* payments. If both of these questions are answered affirmatively, the analysis next focuses on whether the trial court's decree of dissolution expressly provides for continued maintenance payments beyond remarriage *or* whether the written separation agreement extends Larry's obligation to make monthly payments beyond the time of Rochelle's remarriage.

### 1.

In 1973, the General Assembly adopted an act permitting dissolution of marriage in Missouri. Popularly dubbed a "no fault" divorce law, *see generally*, Krauskopf, *Maintenance: Theory and Negotiation*, 33 J.Mo.Bar (1977), the new act repealed Missouri's statutes permitting divorce and changed the philosophical moorings for support for a former spouse.

Under the new act, courts no longer award alimony; instead, courts award maintenance. The distinction is more than one of semantics.

Alimony served "as the equivalent of that obligation for support which arises in favor of the wife out of the marriage contract." *Nelson v. Nelson*, 282 Mo. 412, 221 S.W. 1066, 1067 (1920) (*Nelson I*). "In this limited sense, [alimony] may be deemed an assessment of damages in [the wife's] favor for breach of the contract by the husband." *Id.* 221 S.W. at 1069.

Maintenance, on the other hand, proceeds from "the need for reasonable support by one spouse after the disruption of the marriage." *Nelson II*, 720 S.W.2d at 952. Under the statute, the court can award maintenance only where the court finds that the receiving spouse "(1) [l]acks sufficient property ... to provide for his reasonable needs; *and* (2) [i]s unable to support himself through appropriate employment."

---

**1.** The General Assembly amended Section 452.370 in 1987. The provision pertinent to this appeal remained unchanged, however, from the version that appears in the 1986 Missouri Revised Statutes.

Section 452.335.1. [Emphasis added.] Thus, "maintenance issues for support and *only* for support—and then, until the dependent spouse achieves a reasonable self-sufficiency." *Nelson II,* 720 S.W.2d at 952.

In *Doerflinger v. Doerflinger,* 646 S.W.2d 798 (Mo. banc 1983), this Court determined that "Section 452.335 ... covers the full range of support payments to a spouse, maintenance for an indefinite term, maintenance for a limited period and maintenance in gross." *Id.* at 800. Thus, the Court concluded that "awards of maintenance in gross derive their origin in Section 452.335." *Id.* at 801.

The phrase "maintenance in gross" does not appear in the dissolution of marriage statutes. It appears that the legislature's failure to recognize "maintenance in gross" is not the product of an oversight. Section 452.080, which the General Assembly did not repeal, refers to alimony in gross and, we speculate, survived the 1973 amendments to permit enforcement of alimony judgments entered prior to the effective date of the laws relating to dissolution of marriage.

■ Because maintenance is founded on need, a maintenance award may extend only so long as the need exists. As the statute is cast, therefore, it would make little sense for the law to countenance a lump sum or "gross" award based on need which was not subject to modification. Thus, the dissolution of marriage statutes appear to contemplate a lump sum or gross payment only as a division of property.

In an apparent attempt to accommodate historical terms, *Doerflinger* departs from the statutes by recognizing "maintenance in gross" as a component of dissolution of marriage. Absent the requisite statutory predicate for maintenance in gross, we believe that *Doerflinger* misstates the law by recognizing "maintenance in gross" under the dissolution of marriage laws.

■ *Doerflinger's* error in recognizing maintenance in gross notwithstanding, *Doerflinger* is correct, however, in its broad holding that maintenance finds its origin in Section 452.335. This is reflected in the parties' separation agreement in this case, which expressly states that the parties have given consideration "to all relevant factors for the award of maintenance, including those set forth in RSMo. 453.-335." Moreover, that agreement states that "[t]his support obligation is not related to the division of property and is not intended in any way to constitute a form of payment for any rights or interests of the Wife." We conclude, therefore, that the maintenance award under consideration here is statutory maintenance within the meaning of Section 452.370.2.

### 2.

■ We turn now to consider whether the monthly payments not yet due on the maintenance award are future payments.

In support of her position that the maintenance award in this case survives her remarriage, Rochelle contends that Section 452.335.2 authorizes the award of a fixed sum of maintenance payable in installments. However denominated, this maintenance does not terminate upon the happening of a future event, she urges, despite the express language of Section 452.370.2. Her agreement to accept monthly payments, to which the trial court assented, is but a measure of her and the court's grace, which avoids undue economic hardship for Larry, she contends. She relies on *Doerflinger* and *Mika.*

*Doerflinger* considered the question "whether the wife is entitled to seek modification of an award of maintenance of limited duration by filing a motion within the period of installment payments." 646 S.W.2d at 798. This Court held that modification of a maintenance in gross award is not contemplated by the dissolution of marriage statutes, saying, "That decision ... [to award maintenance in gross is] a final adjudication on the subject spouse's financial dependency and is not reviewable through a modification motion." *Id.* at 801. Rochelle seizes on this "final adjudication" language as dispositive of her point.

Rochelle's reliance on *Doerflinger* is misplaced. While *Doerflinger* properly recog-

nizes that the parties to a separation agreement may agree that maintenance may not be modified, that case did not consider the question whether an award of maintenance terminates upon remarriage of the receiving spouse. The unstated assumption of *Doerflinger* is that the receiving spouse's need continues for the life of the maintenance "in gross" obligation. This is contrary to Section 452.370.2 which presumes that need terminates upon remarriage absent a contrary written declaration by the court or the parties.

Nor does *Mika* assist Rochelle. *Mika* holds that monthly payments made pursuant to a maintenance "in gross" award are not terminated on the remarriage of the receiving spouse. "The trial court awarded the wife periodic maintenance payments of $2,450.00 per month for the next ten years. This type of award is the equivalent of a lump sum award or an award in gross and is non-modifiable. [Citations omitted.] The award also survives remarriage or death."

*Mika* is incorrect because it draws no distinction between alimony and maintenance, assuming for purposes of its reasoning that alimony and maintenance are the same. As we have already said, they are not.

Maintenance awards under Section 452.-335 serve the purpose of permitting the receiving spouse to readjust financially during a period of dependency until that spouse can achieve a reasonable measure of self-sufficiency. Where the trial court, as here, assumed the viability of the concept of "in gross" maintenance, it (and the parties) also assumed the prescience to determine the amount of funding and time achievement of self-sufficiency would require. By permitting monthly payments, the court determined "that the full sum is not immediately necessary to [the spouse's] 'readjustment.'" *Nelson II*, 720 S.W.2d at 954. In other words, the receiving spouse's need continued into the future and must be met in the future with maintenance payments. We hold that monthly maintenance payments not-yet-due and payable under a maintenance award like that

at issue in this case are future payments of maintenance within the meaning of Section 452.370.2.

3.

Section 452.370.2 expresses a legislative determination that the remarriage of the receiving spouse ends that spouse's time of dependence support. The statute erects a presumption that the obligation to pay future statutory maintenance terminates on the remarriage of the receiving spouse. That presumption may be rebutted in two ways, the first being an express provision in the trial court's decree of dissolution.

In this case, the trial court expressly incorporated the parties' property settlement and separation agreement into its decree. The provisions of that agreement therefore became a part of the decree and must be considered in determining whether the obligation to pay future maintenance was "expressly provided in the decree."

The pertinent portions of both the trial court's decree and the separation agreement have previously been set out in this opinion. We find no language in either document *expressly* extending Larry's obligation to continue the monthly payments due on the maintenance in gross award beyond Rochelle's remarriage.

4.

There being no express provision in the trial court's decree, we consider the second avenue by which the statutory presumption can be terminated, asking whether Larry's obligation to pay future statutory maintenance was "agreed in writing." In *LaBarge v. Berndsen*, 681 S.W.2d 441 (Mo. banc 1984), the separation agreement at issue made no explicit statement as to whether the maintenance obligation extended beyond the remarriage of the wife. Instead, it said that maintenance was to continue "for as long as she shall live." This Court reasoned that the "for as long as she shall live" language created an ambiguity as to the parties' intent and held that "[w]here the implication or inference creates a reasonable ambiguity with respect to

nontermination, ... the completeness and integration of the agreement will not prevent resort to extrinsic evidence in order to determine the parties' true intent." *Id.* at 445.

We have searched the property settlement and separation agreement in this case in vain for an ambiguity on the issue of Larry's obligation to pay maintenance beyond Rochelle's remarriage. Rochelle's brief points to no such ambiguity. Indeed, the agreement is silent on the critical issue. In the absence of an ambiguity, *LaBarge* is of no assistance to Rochelle.

We find *no agreement* between the parties in writing that either expressly or by implication extends the obligation to pay future statutory maintenance payments beyond Rochelle's remarriage.

### 5.

■ Rochelle persists, however, arguing that Section 452.370.2 does not apply in this case because the parties expressly agreed that the maintenance here is contractual, not decretal, and that by the express language of the separation agreement, the trial court could not modify the agreement.

#### a.

Section 452.325.4(2) permits the parties to a separation agreement to agree "that its terms shall not be set forth in the decree." Section 452.325.6 permits the parties to a separation agreement further to agree that the "decree may expressly preclude or limit modification of terms set forth in the decree." The Cates' separation agreement recites that the maintenance is "contractual in nature, not subject to modification by the Court."

■ The distinction drawn in the cases between contractual and decretal maintenance finds its root in the old alimony statutes and serves two functional purposes. The first is procedural and determines the manner in which a maintenance obligation can be enforced. "The terms of an agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment." Section 452.-325.5. Contractual maintenance, on the other hand, arises where the "maintenance provisions were not to be incorporated into the decree." *Ebinger v. Berry,* 622 S.W.2d 394, 396 (Mo.App.1981). *See* Section 452.-325.4(1) ("If the separation agreement provides that its terms shall not be set forth in the decree.") Contractual maintenance is enforceable by a separate action for breach of contract. *Haggard v. Haggard,* 585 S.W.2d 480, 481–2 (Mo. banc 1979).

The second function is more substantive. Section 452.325.6 permits the parties to agree that maintenance cannot be modified by the court. This is "contractual" maintenance. Apparently for ease of enforcement of the maintenance agreement, parties often, as here, incorporate "contractual" maintenance within the dissolution decree. This hybrid is decretal for purposes of enforcement and contractual for purposes of modification.

The distinction Rochelle draws between contractual and decretal maintenance is not relevant to whether Section 452.370.2 applies in this case. The statute applies to *statutory* maintenance. Both contractual and decretal maintenance are statutory as they derive their origin in Section 452.335.

#### b.

■ Finally, Rochelle contends that the termination of the maintenance obligation by operation of Section 452.370.2 is tantamount to a modification of the maintenance award contrary to the express language of the separation agreement. We disagree.

To repeat: The maintenance to which Rochelle claims entitlement is permitted by Section 452.335 and is designed to ameliorate the need of the receiving spouse during a time of transition to economic independence. By its own terms, the separation agreement in this case disclaims any suggestion that the maintenance "in gross" award is "intended in any way to constitute a form of payment for any rights or interests of the Wife." We can reach no other conclusion but that the maintenance award here serves the purpose of temporary, economic sustenance for Rochelle.

The statutes that permit maintenance provide for modification of maintenance upon a showing of changed circumstance unless the parties preclude modification by agreement; the Cates reached such an agreement and carefully expressed it in writing. Those same statutes mandate a termination of maintenance upon death or remarriage of the receiving spouse absent agreement in writing or express language to the contrary in the court's decree. Both the agreement and the decree are silent.

Section 452.370 treats modification and termination differently. Modification adjusts a continuing obligation by a judicial determination of need and changed circumstances; termination ends an obligation by the occurrence of a specified event. We are bound by the statute. We cannot turn termination into modification to support Rochelle's position.

 But for *Doerflinger*, we would not hesitate to hold that Section 452.370.2, coupled with the absence of decretal or contractual language extending the maintenance obligation beyond remarriage, terminates the maintenance obligation in this case. Given the unambiguous language of Section 452.370.2, it is difficult to imagine that the careful drafter would fail to state the intent of the parties when failure to do so results in termination of maintenance. Nevertheless, *Doerflinger's* approval of maintenance "in gross" may well have led the parties in this case to assume that alimony in gross concepts still applied and that an "in gross" award contemplated continuation of the maintenance obligation beyond remarriage. Where the ambiguity of the parties' intent is created by reliance on this Court's prior (but now overruled in part) decisions, we deem it wise to remand the case to permit the trial court to determine whether the parties intended the maintenance obligation to meet Rochelle's economic needs for a period of readjustment or to serve some purpose outside Section 452.335.

c.

We granted transfer in this case because of the uncertainty that marked appellate decisions on the application of Section 452.370.2. We hold today that maintenance "in gross" is no longer recognized as a tool for providing economic sustenance under Section 452.335. Decisions in conflict with the Court's holding today conflict, in substantial part, because they attempt to reconcile alimony concepts with the maintenance regime adopted in 1973. Cases in conflict with this holding should no longer be followed.

The drafting of separation agreements and court decrees under the dissolution of marriage laws has likewise been "informed" by precedents we now reject. For the future, where parties have assumed that maintenance in gross provides a method for the distribution of the property of a marriage over time, and have so stated without ambiguity, such agreements must be upheld. But where agreements either clearly indicate that a maintenance "in gross" award is founded on the economic need of a spouse, or are ambiguous, courts will determine the continued obligation of the paying party to pay maintenance following remarriage or death upon the language (or silence) of the separation agreement or the court's decree.

### III.

The judgment is vacated and the cause is remanded for further proceedings consistent with this opinion.

RENDLEN, COVINGTON, HOLSTEIN, BLACKMAR, JJ., and HIGGINS and SEILER, Senior Judges, concur.

BENTON and THOMAS, JJ., not participating because not members of the Court when case was submitted.