Pierre L. LaBARGE, Jr., Respondent,

v.

Mary Ann BERNDSEN, etc., Appellant.

Pierre L. LaBARGE, Jr., Respondent,

v.

Mary Ann BERNDSEN, Appellant,

v.

BOATMEN'S NATIONAL
BANK, Garnishee.

Nos. 65969, 66153.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1984.

Richard H. Edwards, Lynn E. Morgenstern, Clayton, for appellant.

Timothy R. Anderson, Donald H. Clooney, St. Louis, for respondent.

GUNN, Judge.

This appeal involves the consolidation of two cases including a garnishment proceeding brought by a former spouse to collect unpaid maintenance. The trial court quashed the garnishment and the garnisher (the former wife) appealed. The trial court did, however, award attorney's fees to the former wife, and from this order the former husband cross-appealed. The trial court also awarded the former wife attorney's fees incurred in prosecuting her appeal, and from this order the former husband also appeals. The original appeal and cross-appeal were ordered transferred by this Court. The subsequent appeal was certified to this Court by the court of appeals. Both cases are considered as on original appeal. Rule 83.09.

We affirm the fee awards and reverse the trial court's order quashing the garnishment.

The fundamental issue is whether under the circumstances of this case and in light of § 452.370.2, RSMo 1978, the former husband remains obligated for maintenance payments beyond the remarriage of the former wife.

The former wife, Mary Ann Berndsen and the former husband, Pierre L. LaBarge, Jr., had their marriage dissolved on July 21, 1978, following an uncontested hearing. The dissolution decree incorporated a separation agreement which they had previously executed. This agreement provided for maintenance in a certain amount to be paid to the former wife "for as long as she shall live." The agreement also stated that maintenance was to continue after the death of the former husband. The former husband also agreed to maintain health and hospitalization insurance for the former wife "until such time as she may remarry." The agreement declared that it represented a complete settlement of their respective property rights and any claims they might have arising out of the marital relationship.

During the dissolution hearing, the former husband gave the following enlightening testimony in answer to his counsel's questions:

Q. In addition to the said maintenance award, you have pledged the stock as security, *and you understand that she will receive this particular maintenance, even though she remarries?*

A. *That is correct.*

Q. And furthermore, she would continue to receive it in the event of your death?

A. Yes, sir.

Q. And the only matter which ceases in the event of her death [sic]. Is that correct?

A. Yes.

(Emphasis added.)

The parties also entered into a trust agreement with Boatmen's National Bank, garnishee, as trustee. Under the terms of that agreement, the husband pledged 1,100,000 shares of common stock in La-Barge, Inc. as security for the maintenance obligation.[1] The trust agreement also provided that he would pay the attorney's fees and other expenses incurred by the former wife in resolving certain disputes among the parties.

On July 11, 1982, the former wife remarried Herbert Berndsen. The former husband thereafter ceased paying maintenance, and the former wife brought the garnishment action, which is the subject of this appeal, against Boatmen's Bank. The former husband intervened and moved to quash the garnishment. In the hearing on the motion to quash, the former husband's earlier testimony regarding his understanding of the effect of the agreement was offered and received into evidence.

The issue presented by the motion to quash was whether, by operation of § 452.-370.2, RSMo 1978, the former husband's obligation to pay maintenance to the former wife terminated upon her remarriage. That subsection states that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." *Id.*[2]

The trial court found that it was the intent of both parties to the separation agreement that the former wife's right to receive maintenance should not terminate in the event of her remarriage. Nevertheless, the trial court ordered the garnishment quashed, concluding that the statute [§ 452.370.2] required an "express provision" in order to create a maintenance obligation which would continue beyond the remarriage of the recipient spouse, and that the court was powerless to look beyond the separation document itself in order to determine the intent of the parties.

■ However, the peculiar circumstances of this case do allow a glimpse at the evidence beyond the separation document to determine the legal effect the parties intended for that agreement. Thus, reversal of the judgment is compelled. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) (erroneous declaration of law requires reversal).

Under § 452.370.2, the question of whether the former husband's obligation to pay maintenance terminated upon his former wife's remarriage depends upon whether the parties "otherwise agreed" in their separation agreement. The separation agreement does not explicitly state that maintenance is not to terminate upon her remarriage; however, it does state that maintenance is to continue "for as long as she shall live." The question then becomes whether this language provides "otherwise" than that maintenance is to terminate upon remarriage. The answer is that it is ambiguous in this respect, in that "its terms convey more than one meaning so that reasonable persons may fairly differ in interpreting those terms." *Landreth v. Gan*, 647 S.W.2d 932, 936 (Mo.App.1983).

To demonstrate this ambiguity, it is sufficient for present purposes to show that the terms may reasonably be interpreted as providing that maintenance is not to terminate upon the former wife's remarriage. This conclusion results from the relationship between the stated term of continuation (the life of the former wife) and the condition whose effect is sought to be determined (her remarriage). The relationship between these is that the condition (remarriage) will necessarily occur, if it is to occur at all, prior to the expiration of the

---

**1.** The amount of the maintenance payments was equivalent to the dividend paid on this stock, with $66,000 per year stated as the minimum obligation.

**2.** The statute has since been amended to refer to "future [statutory] maintenance." § 452.370.2, RSMo Cum.Supp.1984.

term of continuation—her life. A reasonable inference, then, is that maintenance is to continue beyond any eventual remarriage and conversely that maintenance is not to terminate upon the happening of that event.[3] This is not to say that this is the only reasonable inference, nor that it is the most reasonable inference. However, since there is a reasonable inference available that the agreement provides "otherwise" than that maintenance is to terminate upon remarriage, the agreement is at least ambiguous on this point.[4]

The inference that the parties intended for maintenance to continue beyond the wife's remarriage is also bolstered by the provision that health insurance was to remain the husband's obligation only "until such time as [the wife] may remarry." This overt reference to the termination of benefits upon remarriage indicates that the parties were aware of and rejected that condition as a possible limitation upon maintenance.

■ Since the agreement is ambiguous regarding its effect in the event of remarriage, resort may be had to extrinsic evidence, including parol evidence, to determine the true intent of the parties to the contract and resolve the ambiguities. *Modine Manufacturing Co. v. Carlock*, 510 S.W.2d 462, 467 (Mo.1974); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973); *Robson v. United Pacific Insurance Co.*, 391 S.W.2d 855, 861 (Mo.1965); *Fisher v. Miceli*, 291 S.W.2d 845, 848 (Mo.1956); *Wilson v. Bob Wood & Associates, Inc.*, 633 S.W.2d 738, 747 (Mo.App.1981). The intent of the husband to obligate himself to the payment of maintenance notwithstanding the former wife's potential remarriage is manifest in his testimony during the dissolution proceeding. The trial court in the present proceeding determined this to be the intent

of both parties to the agreement, as a matter of fact. It could scarcely have determined otherwise.

The circumstances in this case differ significantly from those in *Desloge v. Desloge*, 617 S.W.2d 486 (Mo.App.1981), a case apparently relied on by the trial court, and which at first blush seems apt. In *Desloge*, the separation agreement in question provided that maintenance was to terminate upon the earliest to occur of the wife's death or the expiration of 121 months. The former wife remarried within the 121 month period and the former husband moved to modify the decree which incorporated the agreement, contending that § 452.370.2 operated to terminate the maintenance obligation upon her remarriage. The trial court denied the motion after a non-evidentiary hearing. The trial court's judgment therefore amounted to a determination, as a matter of law, that the agreement unambiguously provided for maintenance to continue beyond remarriage. This is because, if an ambiguity on that point existed, the question of the legal effect of the agreement became one of fact calling for resort to evidence of other explanatory provisions or extrinsic circumstances. *Commerce Trust Co. v. Howard*, 429 S.W.2d 702, 705 (Mo.1968); *Massachusetts Bonding & Insurance Co. v. Ray Dilschneider, Inc.*, 203 F.2d 556, 559 (8th Cir. 1953). The Eastern District of the Court of Appeals reversed.

Viewed in this context, it is clear that the *Desloge* court properly rejected the trial court's construction of the agreement as a matter of law in favor of the recipient spouse. The agreement at best ambiguously provided for non-termination of maintenance upon the wife's remarriage. The only inference in favor of non-termination was one of doubtful reasonableness, the inference being that, by stating two specif-

---

**3.** *See Krick v. Krick*, 76 Nev. 52, 348 P.2d 752 (1960) (decree providing maintenance for life held to be an order "otherwise" sufficient to prevent termination upon remarriage).

**4.** The further condition that maintenance is not to terminate upon the former husband's death is essentially neutral with respect to the inference that maintenance was intended to continue be-

yond remarriage. It is possible to construe this condition as indicating that maintenance is to terminate solely upon the former wife's death. However, it is an equally available inference that, by specifying non-termination upon one of the statutory conditions, the parties intended to preclude non-termination upon the unmentioned statutory condition (remarriage).

ic termination conditions—the expiration of the period and the wife's death—the parties intended that maintenance was not to terminate on the happening of any other condition.[5] Also, in *Desloge*, unlike the present case, the stated term bore no special relationship to remarriage as compared to all other conceivable termination conditions, since remarriage could have occurred either before or after the expiration of the term. Certainly it was a reasonable inference that the parties intended for maintenance to be subject to the statutory termination conditions.

■ It should be understood, however, that the following generalization by the *Desloge* court should be considered as limited by the holding in the present case: that "[t]he language of § 452.370.2, RSMo 1978 makes it abundantly clear that neither an implied agreement nor an exclusionary influence can satisfy the dictate of § 452.370.2, RSMo 1978, and prevent termination of the maintenance obligation after remarriage." *Desloge*, 617 S.W.2d at 488. Where the implication or inference creates a reasonable ambiguity with respect to non-termination on the order of that present here, the completeness and integration of the agreement will not prevent resort to extrinsic evidence in order to determine the parties' true intent.

■ There was a reasonable ambiguity created in the present case. Thus, extrinsic evidence was available to aid in determining the parties' intent. The parties were given full opportunity to present such evidence to the trial court. The factual issue of the intent of the parties is therefore concluded and is in accordance with the trial court's finding of fact. No remand is necessary.

■ The final matter for consideration pertains to the award of attorney's fees and costs incurred in the garnishment action and subsequent appeals. The trial court had authority to award such fees and

costs, in its discretion, in an action brought to enforce a maintenance obligation. *Moser v. Moser*, 642 S.W.2d 688, 689 (Mo.App. 1982); § 452.335, RSMo 1978. Furthermore, the fees and costs allowable extend to those incurred "after entry of judgment." § 452.355. It is not necessary that the party awarded fees have prevailed either at trial or on appeal. *Nelson v. Nelson*, 516 S.W.2d 574, 581 (Mo.App.1974). The trial court properly considered the relevant factors when making the award. That fact is not challenged. It is therefore unnecessary to consider whether the attorney's fees and costs were authorized by the trust agreement. The trial court's judgment in this respect is therefore affirmed.

The trial court's judgment quashing the garnishment is hereby reversed.

All concur.

---

**5.** *But see Watters v. Foreman,* 204 Neb. 670, 284 N.W.2d 850 (1979). Under facts substantially identical to those in *Desloge,* the court construed the agreement as "otherwise" within the meaning of the statute, reasoning that the inclusion

of one of the statutory conditions (the death of the recipient spouse) as a termination condition under the agreement expressed an intention that the other statutory conditions (e.g., that spouse's remarriage) were not to effect a termination.