Jean L. GIESELER, now Wilson,
Movant–Appellant,

v.

Donald G. GIESELER,
Movant–Respondent.

No. 56658.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 13, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 11, 1990.

Application to Transfer Denied
May 15, 1990.

---

Alfred J. Rathert, Fenton, for movant-appellant.

Allan H. Zerman, Clayton, for movant-respondent.

KAROHL, Judge.

Movant, Jean L. Wilson, formerly Gieseler, appeals an order of the trial court which determined Donald G. Gieseler was not obligated to pay movant maintenance under a decree of dissolution granted March 18, 1987. The court considered Jean's motion together with a motion filed by Donald requesting an order that Jean endorse and deliver to him a proceeds check from the sale of a marital asset which was granted to Donald in the decree of dissolution. The court denied his motion. Only Jean appealed.

In hearing the motions the court was required to determine the rights and obligations of the parties under their dissolution decree in light of subsequent events. Donald contended that any obligation to pay maintenance terminated when Jean remarried on October 7, 1988. The court indirectly found in favor of Donald on this issue by finding Jean never acquired a right to maintenance according to the provisions of a property settlement agreement incorporated in the decree of dissolution. Specifically, the court found that the only provision regarding maintenance in the decree of dissolution provided, "Maintenance: Contingent, as contained in Separation Agreement." It then found a condition precedent to the payment of contractual maintenance was never met. In the alternative the court found that Jean's remarriage terminated the obligation to provide maintenance, citing as authority *Desloge v. Desloge*, 617 S.W.2d 486, 488 (Mo.App. 1981).

Wife contends the finding of fact that the decree provisions for maintenance never matured into an obligation to pay and the legal conclusion that her remarriage terminated any obligation to pay maintenance are both wrong. We agree. First, there were extensive provisions for maintenance in the settlement agreement and the dissolution decree, not a single provision.

Second, the trial court misapplied the law by relying on *Desloge* in light of the subsequent decisions of the Supreme Court in *LaBarge v. Berndsen*, 681 S.W.2d 441 (Mo. banc 1984) and this court in *Lietz v. Moore*, 703 S.W.2d 54 (Mo.App.1985). Accordingly, we find the court erred and misapplied the law in denying Jean a right to maintenance as provided in the decree of dissolution. We reverse and remand. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The parties specifically agreed: (1) Jean was to receive the family residence, free and clear; (2) Donald would pay maintenance in an amount sufficient to permit Jean to pay off the notes and deeds of trust on the residence if Donald failed to satisfy the obligations before a fixed date. He did not satisfy the obligations prior to that date. Rather, he provoked a threat of foreclosure by failing to make monthly payments thereby creating a requirement that Jean promptly sell the residence or lose it. Jean received $11,897.90 of the $104,500 sale price. Sale costs of $6,288.81 and the balances required to satisfy the liens totaling $86,313.21 were paid from the sale price. Donald's actions in failing to pay off the notes and deeds of trust cost her $86,313.21.

The decree of dissolution of the marriage of the parties was entered on March 18, 1987. It ordered the parties to perform the terms of their separation agreement. The agreement was attached, incorporated and made a part of the decree. The provisions of the decree relative to maintenance include the following:

Maintenance: Contingent as contained in separation agreement; there is no liability to continue payments of maintenance after the death of the recipient and no liability to make substituted payments after the death of the recipient. The party obligated to pay support or maintenance is hereby notified that upon application by the obligee or the Missouri Division of Child Support Enforcement CSE of the Department of Social Services DSS, the obligor's wages or other income shall be subject to withholding

without further notice ... the withholding shall be for the current month's maintenance and support; ...

The relevant provisions of the separation agreement are as follows:

6. The parties are possessed of the following marital property:

(a) 718 Wagon Ridge, St. Louis County, Missouri 63017 (the "residence");

(g) 1770–1772 Astra Way, Arnold, St. Louis County, Missouri (the "apartments");

(h) Franchise, leaseholds and personalty pertaining to International Bartending Institutes in St. Louis, Missouri and Nashville, Tennessee (the "businesses"); ·

8. The marital property shall be equally divided between the parties as follows, to wit:

(a) Don shall pay off all loans for which the residence is used as collateral and deliver to Jean a Quit Claim Deed conveying his interest in the residence on or before April 1, 1988. Upon delivery of said Quit Claim Deed, said residence shall be the sole property of Jean, free and clear of any claim of ownership thereto on the part of Don. However, Don may elect not to pay off the Forty–Five Thousand Dollar ($45,000.00) loan to Centerre Bank, in which case the provisions of paragraph 10 below will apply. In such event, Donald shall remain on the deed until all loans for which he may be responsible are paid in full by Jean; thereafter, Don shall convey his interest in the residence to Jean by Quit Claim Deed.

10. Jean's waiver of maintenance is contingent upon Don paying off all loans that are presently secured by Deeds of Trust on the residence on or before April 1, 1988. If Don fails to pay off said loans by said date, his obligation to pay said loans will cease and Don shall pay to Jean the sum of Ninety–Six Thousand Dollars ($96,000.00) in contractual, nonmodifiable maintenance in One Hundred Twenty (120) equal monthly installments of Eight Hundred Dollars ($800.00) per month commencing May 1, 1988. Said payments of maintenance, if they occur, shall be includable in Jean's income for tax purposes and deductible from Don's income in accordance with federal and state laws as they now exist or as amended.

Subsequent events created an ambiguity in enforcement of the decree of dissolution. First, on February 17, 1988 Jean sold the residence for $104,500. This became necessary when Donald failed to make the monthly payments and the bank allowed Jean time to sell the property before foreclosure. Second, on October 7, 1988 Jean remarried. Third, on January 24, 1989 Donald sold the apartments for $70,000 gross, $13,664.02 net. Fourth, from May, 1988 through February, 1989 Donald paid Jean $800 per month, a total of $8,000.

The property settlement agreement, incorporated in the decree of dissolution, provided the apartments and the businesses described in paragraph 6(g) and (h) were awarded to Donald. According to the undisputed evidence these properties were purchased by obtaining a first and second deed of trust on the residence which was to be the property of Jean. He therefore agreed to pay the notes which were debts incurred to purchase marital property awarded to him. When Jean was required to sell the residence for $104,500, $86,-313.21 of the sale price was used to pay off deeds of trust which Donald agreed to pay no later than April 4, 1988. As a result Jean lost the benefit of the property settlement agreement incorporated in the decree of dissolution in that same amount unless repaid by Donald. If the provisions for maintenance are not enforced Jean cannot recover the loss and Donald will be enriched in the same amount. The trial court sought to avoid this result by determining that the parties, by agreement and under the decree, became tenants in common of an undivided one half interest in the residence; that Donald's half interest paid off one of the deeds of trust and he remained obligated to reimburse Jean for the deed of trust paid off by her undivided half interest.

We find the court erred in determining that the contractual non-modifiable maintenance agreed to by the parties and ordered by the dissolution court, terminated by reason of remarriage. We do not reach and do not decide other issues argued in the briefs. Donald accepts the finding of the trial court that a tenancy in common resulted and this supports the approach of the trial court. Jean argues this conclusion is prescribed by the provisions of § 452.330 RSMo 1986 and fails to follow *Corder v. Corder*, 546 S.W.2d 798, 805 (Mo.App. 1977).

Our Supreme Court interpreted § 452.370.2 RSMo 1978 and decided that a former husband's obligation to pay maintenance terminates on remarriage of former wife unless the parties "otherwise agreed" in their separation agreement. *LaBarge* 681 S.W.2d at 443. Absent such an agreement the obligation automatically terminates. *LaBarge* rejected the view expressed in *Desloge* that only express words of agreement could prevent automatic termination. It held the agreement must be interpreted to give effect to the intention of the parties. Any ambiguity may be resolved by extrinsic evidence. *Id.* at 444. This court followed *LaBarge* and found, "The keystone is the true intention of the parties as determined from the language of the agreement or the decree, either explicit or arising by inference or implication." *Lietz*, 703 S.W.2d at 56.

In the present case the parties agreed wife would have the sole ownership of the family residence free and clear. Donald, by his choice, was to pay off the deeds of trust or pay Jean maintenance in an amount equal to the balances due on two deeds of trust. The maintenance option was expressly contractual and non-modifiable to insure that the deeds of trust would be paid and the wife would have the residence free and clear. Maintenance became an obligation under the agreement and the decree only if husband chose not to pay off the deeds of trust. The amount of maintenance, $800 per month for 120 months, provided a sum approximately equal to the balance on the deeds of trust. In *Lietz*, we reviewed a similar provision for maintenance in regard to the payment of the balance due on an automobile. We there concluded:

> the inescapable intention of the parties was not to provide support to the wife, but to provide for the payment of a marital debt. The accomplishment of this purpose is not affected by wife's remarriage. The fact the payments were denominated as maintenance, perhaps for tax purposes, in no way changes the reality of the parties' obvious intention. The parties expressed in writing, clearly albeit inferentially, their intention that maintenance should not terminate upon remarriage. *Id.* at 57.

We reach the same conclusion in the present case. The trial court erred in ruling that the statute required an explicit statement that maintenance was to continue after remarriage.

Although Jean sold the residence before Donald was due to pay off the notes and deeds of trust she did so because Donald was not making monthly payments. His failure provoked a possible foreclosure. He participated in the sale and does not claim the sale operated to relieve him of his obligation to pay maintenance. On the contrary, he began maintenance payments after the date fixed for pay-off of the debts secured by the residence.

We reverse and remand with instructions that the trial court determine the balance due Jean for maintenance, after allowance for all credits to which Donald is entitled by reason of payments made.

PUDLOWSKI, P.J., and CRANDALL, J., concur.