Jo Etta (Snider) GLENN, Respondent,

v.

Jerry Francis SNIDER, Appellant.

No. 75289.

Supreme Court of Missouri,
En Banc.

May 25, 1993.

Samuel J. Short, Jr., Stockton, for appellant.

William G. McCaffree, Nevada, for respondent.

LIMBAUGH, Judge.

Jerry Francis Snider appeals an order of contempt entered against him for failure to comply with the requirements of a decree of dissolution of his marriage to Jo Etta Snider (now Glenn), and, in a consolidated case, he appeals a judgment entered against him and in favor of Jo Etta in a suit on a promissory note. The cases were certified for transfer by the court of appeals; this Court has jurisdiction under article V, section 10, of the Missouri Constitution. We affirm the judgments of the trial court.

In this appeal, we consider whether a former spouse remains obligated to pay maintenance of fixed duration and amount where the payee spouse remarries and where both the decree of dissolution and the separation agreement are silent on the effect of remarriage.

On April 7, 1989, the Circuit Court of Cedar County dissolved the marriage of Jerry Francis Snider and Jo Etta Snider, now Jo Etta Glenn. In the decree of dissolution, the court ordered Jerry to pay main-

tenance to Jo Etta. The decree contained language that was essentially identical to that in the parties' separation agreement, completed on the morning of the hearing. The decree provided:

Wife is awarded alimony in the amount of $600 per month for a period of nine years, beginning May 1, 1989. This provision is contractual and not decretal and is not subject to modification. This provision is made by way of support of the wife and not by way of property settlement. Payments shall be in cash (not property) under this decree, will not extend beyond the death of the payee spouse, and the spouses will not file joint returns, nor be members of the same household. Payments will be reported as taxable income by wife and will be deductible by husband. Said installments shall be payable through the Clerk of the Circuit Court of Cedar County, Missouri. The obligation created by this decree is as reinforcement of the separation agreement incident to divorce concluded between the parties. The Court contemplates that this obligation shall not be dischargeable in bankruptcy and is to provide for wife's living expenses in view of the inadequacy of wife's assets, the conveyance of family business to husband, wife's physical and emotional condition, and wife's questionable earning capacity.

Neither the decree nor the separation agreement made any express reference to termination or continuation of the maintenance payments upon the contingency of Jo Etta's remarriage.

The dissolution court also awarded the family home to Jo Etta and charged the indebtedness on the home to Jerry. Under the decree, if Jo Etta were to sell the home and if Jerry were unable to discharge the indebtedness in full at the time of sale, Jo Etta could purchase the promissory note that secured the original purchase of the home from the Farmers Home Administration. Jerry would then make the balance of payments directly to Jo Etta.

On November 29, 1989, Jo Etta remarried.

The family home was sold in May of 1990, but Jerry was unable to discharge the principal on the note. As provided in the decree of dissolution, Jo Etta purchased the note from the Farmers Home Administration. Jerry then became obligated to Jo Etta to pay monthly payments of $131 on the note. In January of 1991, however, Jerry ceased making the payments.

On May 3, 1991, Jo Etta filed suit against Jerry in the Circuit Court of Cedar County, alleging that Jerry had failed to make installment payments on the note. Jerry answered, stating that he was no longer obligated to pay maintenance to Jo Etta after her remarriage and that his $600 monthly payments should have been applied against his indebtedness on the note. Additionally, Jerry counterclaimed for abuse of process.

On July 16, 1991, Jo Etta filed an "Application for Order to Show Cause and Motion for Contempt Citation" in which she claimed that Jerry was in violation of the provisions of the divorce decree either because he failed to make note payments or because he failed to make maintenance payments. Jerry filed an answer in which he denied any obligation to provide continuing maintenance to Jo Etta after her remarriage.

The court consolidated the suit on the note and the contempt action for purposes of a hearing. The court heard evidence concerning the intent of the parties in entering into the maintenance agreement. Jerry testified that the provision for maintenance was not meant to survive remarriage and that his $600 monthly payments were accelerated payments on the note.

The court held that the parties had intended for the maintenance provision to survive remarriage and, therefore, entered judgment against Jerry in the suit on the note and ordered him to pay arrearages. The court also adjudged Jerry to be in contempt for violation of the maintenance provision of the decree. Finally, the court

entered judgment in favor of Jo Etta on the counterclaim for abuse of process.[1]

On appeal, Jerry's sole argument is that the trial court erred in determining that his obligation to pay maintenance did not terminate upon Jo Etta's remarriage because § 452.370.2, RSMo Supp.1988,[2] mandates termination of payments where the decree or settlement is silent on the effect of remarriage. Obviously, resolution of this issue is dispositive of both cases.

Section 452.370.2 provides:

Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

*Cates v. Cates*, 819 S.W.2d 731 (Mo. banc 1991), handed down after entry of the decree in this case, explains the effect of this statute and does so in a factually similar context. In *Cates*, husband was ordered to pay wife maintenance in the amount of $325 per month for 24 months. With approximately 12 months remaining on the maintenance payments, the ex-wife remarried. The decree was silent on the critical question of whether the maintenance payments would continue or cease in the event of remarriage. This Court held that § 452.370.2 creates a presumption that maintenance terminates upon remarriage of a payee spouse, *Cates*, 819 S.W.2d at 736, a presumption that may be rebutted only "if otherwise agreed in writing or expressly provided in the decree." *Id.* Because the decree and separation agreement did not address the effect of remarriage, this Court then concluded that the statute should control and that the payments should terminate.

The payee spouse suggested here, as did the payee spouse in *Cates*, that the unqualified and unrestricted requirement for maintenance payments, fixed in duration and amount, created an ambiguity as to whether the parties "otherwise agreed" that the maintenance payments were to continue beyond remarriage. The payee spouses con-

tended, in view of this ambiguity, that resort to extrinsic evidence to determine the intent of the parties on the effect of remarriage would then be appropriate. This was the approach taken in *LaBarge v. Berndsen*, 681 S.W.2d 441 (Mo. banc 1984), where this Court was presented with an "ambiguous" separation agreement that did not address the effect of remarriage but required maintenance payments "for so long as she [the ex-wife] shall live."

■ In *Cates*, however, this Court tacitly rejected the rationale of *LaBarge* by holding that an agreement that is silent on the issue of remarriage is not ambiguous. *Cates*, 819 S.W.2d at 737. In other words, where the decree and agreement are silent, there is nothing to rebut the statutory presumption of termination. To the extent that *LaBarge* holds otherwise, it is overruled.

■ The conclusion in *Cates* that the statute should operate to terminate maintenance payments on remarriage where the decree and agreement are silent does not apply retroactively to decrees and separation agreements entered prior to the *Cates* opinion. *Cates*, 819 S.W.2d at 738. Instead, the proper course is to determine whether the parties intended for the payments to continue past remarriage not because of any ambiguity in the decree or agreement (as *LaBarge* would suggest), but, as stated in *Cates*, because of the parties' possible reliance on the recognition of awards of "maintenance in gross," in *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983). *Cates* recognized that *"Doerflinger's* approval of maintenance 'in gross' may well have led the parties in this case to assume that alimony in gross concepts still applied and that an 'in gross' award contemplated continuation of the maintenance obligation beyond remarriage." *Cates*, 819 S.W.2d at 738. *Cates* was then remanded to permit the trial court to determine whether the parties did indeed intend for the payments to continue past remarriage regardless of whether the payments were characterized as "maintenance," "maintenance in gross," "division of property," or otherwise.

---

1. The judgment on the counterclaim for abuse of process was not appealed.

2. Now § 452.370.3, RSMo Supp.1992.

▮ In this case, the trial court erroneously applied a *LaBarge*-type analysis and determined that the decree and separation agreement were ambiguous, and, after hearing, proceeded to make findings of fact on the intention of the parties. Nevertheless, under the instructions in *Cates* for decrees and separation agreements entered before the *Cates* decision, the same findings of intent were required, even though for a different reason—the parties' possible reliance on *Doerflinger*. In any event, the trial court found expressly that the parties intended for the payments to be made regardless of remarriage. Appellant does not contest the sufficiency of the evidence on which this finding was based, and having reviewed the transcript of the hearing, we concur that the finding was amply supported by the evidence. Because the trial court has already passed on the question of the parties' intent, no remand is necessary. Therefore, we hold that § 452.370.2 does not operate to terminate maintenance payments upon respondent's remarriage.

The judgments are affirmed.

All concur.