William Robert MEREDITH,
Petitioner–Respondent,

v.

Mary Virginia (Meredith) BRACKETT,
Respondent–Appellant.

No. 17931.

Missouri Court of Appeals,
Southern District,
Division Two.

June 28, 1993.

Michael J. Svetlic, Steven M. Petry, Kansas City, for respondent-appellant.

Russell A. Ward, Joplin, for petitioner-respondent.

GARRISON, Judge.

The issue in this case is the effect of a former wife's remarriage on the former husband's obligation to make additional maintenance payments pursuant to a Marital Settlement And Separation Agreement and dissolution decree. A factual history of the case is outlined below.

Respondent, William Meredith (William) filed a petition for dissolution of marriage against appellant, Mary Meredith (Mary)[1] in February 1989. Negotiations resulted in a Property Settlement And Separation Agreement (Agreement). The Agreement provided, in pertinent part:

## MAINTENANCE

The parties agree after examining all relevant factors including the situation of both parties at the present time that it is reasonable for and Husband agrees to pay to Wife periodic maintenance for a period of ten (10) years. Said payments shall be made as follows.

The sum of One thousand dollars ($1,000.00) per month for one hundred twenty (120) months, said payments to be made in advance of the 1st day of July, 1989, and on the same day of each month thereafter until paid in full. Time is of the essence. If not paid when due, Wife may declare the obligation in default and declare the entire unpaid balance immediately due and payable. Upon full payment, Husband's obligation to make such payments and Wife's right to receive said payments shall be terminated. It is expressly agreed and understood by both parties that said maintenance shall not be subject to modification in any respect by the Court or either party or extension beyond the ten (10) year period and that said maintenance is contingent upon the death of Wife and shall be terminated upon her death. Said maintenance payments shall not be terminated by the death of Husband. Payments falling due after his death or due but unpaid at the time of his death shall survive the death of Husband and become payable by his estate. Both parties hereby waive and relinquish any right which they may have under the laws of the State of Missouri or any other state of jurisdiction to seek additional maintenance, alimony, or other sums for their personal support from the other.

Husband forever waives any and all claims to maintenance he may be entitled to from Wife and understands that he may never in the future request maintenance from Wife.

These provisions concerning the payment of maintenance shall be incorporat-

---

1. For clarity, the parties will be referred to by their first names.

ed into the Decree dissolving the marriage of the parties.

On May 19, 1989, the trial court entered a decree of dissolution which specifically incorporated the agreement for maintenance described above.

Mary remarried in late July, 1991. William made the maintenance payment due August 1, 1991, knowing of the remarriage. Thereafter, he refused to make additional maintenance payments, alleging that the payments constituted future statutory maintenance which was terminated automatically by the provisions of § 452.-370(3),[2] which states:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Mary then declared all remaining amounts of maintenance due and payable and issued execution. The case is before this court on Mary's appeal from the trial court's Order quashing the execution. The Order stated, in part:

> After considering all of the evidence, the trial briefs, cases cited by counsel, and the *Cates* decision announced by the Missouri Supreme Court, the Court sustains Petitioner's Motion to Quash.

Mary raises two points relied on, paraphrased as follows: (1) the trial court erroneously applied the law in quashing the execution, which was to enforce contractual maintenance provisions of the Agreement where both the Agreement and the decree predated *Cates v. Cates*, 819 S.W.2d 731 (Mo. banc 1991); and (2) the Agreement was ambiguous concerning the effect of remarriage on the obligation to pay further maintenance, and the trial court's order quashing the execution was against the weight of the evidence.

In *Cates v. Cates, supra,* the court considered the effect of remarriage on a maintenance award. In that case, the separation agreement was incorporated into the dissolution decree and provided: husband

would pay wife $7,800 payable at the rate of $325 per month; it could not be modified by the court; it was referred to as "contractual" and "maintenance in gross"; and the parties agreed that the "support obligation is not related to the division of property and is not intended in any way to constitute a form of payment for any rights or interests of the Wife." Both the separation agreement and decree were silent about the effects of remarriage. The issue in *Cates* was whether § 452.370.2 terminated future maintenance obligations because of the wife's remarriage. The court said the statute "creates a rebuttable presumption that the obligation to pay statutory maintenance terminates upon the remarriage of the receiving party" but it is "rebutted by an agreement in writing that the obligation to pay statutory maintenance extends beyond remarriage...." *Cates,* 819 S.W.2d at 734. As recognized in *Cates,* application of the statute depends on whether the payments qualify as "statutory maintenance," and if so, whether the unpaid amounts are "future payments."

The court in *Cates* concluded that were it not for *Doerflinger v. Doerflinger,* 646 S.W.2d 798 (Mo. banc 1983), it would hold that § 452.370.2 terminated the maintenance obligation because of the absence of a provision in the decree or contractual language extending that obligation beyond remarriage. *Doerflinger* had recognized the validity of "awards of maintenance in gross" under the dissolution of marriage laws. The *Cates* court held, however, that *Doerflinger* was in error in that regard because the statutes relating to dissolution of marriage "appear to contemplate a lump sum or gross payment only as a division of property." *Cates,* 819 S.W.2d at 735. The court said:

> Nevertheless, *Doerflinger's* approval of maintenance "in gross" may well have led the parties in this case to assume that alimony in gross concepts still applied and that an "in gross" award contemplated continuation of the maintenance obligation beyond remarriage. Where the ambiguity of the parties' intent is created

---

**2.** All references to statutes are to RSMo 1986, V.A.M.S.

by reliance on this Court's prior (but now overruled in part) decisions, we deem it wise to remand the case to permit the trial court to determine whether the parties intended the maintenance obligation to meet Rochelle's economic needs for a period of readjustment or to serve some purpose outside Section 452.335.

*Cates,* 819 S.W.2d at 738.

In this context, Mary argues in Point I that the trial court erroneously applied *Cates* in the instant case. She does not contend this case should be remanded for additional evidence. Rather, she contends that, because the Agreement and decree predated the *Cates* opinion, that case was improperly applied retroactively "where the parties entered into contractual maintenance in gross" under the *Doerflinger* decision. For the reasons that follow, we do not agree.

We interpret the *Cates* opinion to hold that, as to separation agreements and dissolution decrees predating that opinion and which are silent on the effects of remarriage, the pertinent inquiry is whether the maintenance obligation was intended by the parties to meet the economic needs of the payee (such obligation would be terminated by remarriage in the absence of specific language in the agreement or decree extending it beyond that event) or for some purpose outside § 452.335, such as being a method for the distribution or division of property (in other words, with an intent to follow *Doerflinger,* in which event the obligation would extend beyond remarriage even though not specifically so stated in the agreement or decree).

The evidence presented at the hearing on the motion to quash in the instant case supports the trial court's application of *Cates* and § 452.370.2. For example, the attorney who represented Mary in negotiating the separation agreement and at the time of the dissolution decree testified, on cross-examination, as follows:

BY MR. WILLIAMS:

Q. ..., is it true that, in addition to the payment of maintenance, that Dr. Meredith made payments or was ordered to make payments to equalize the division of property?

A. Correct.

Q. Okay. So, the maintenance in this case was not in lieu of some division of property; was it? It was for a spousal support and not some kind of disguised property payment; was it?

A. Well, it was—It was just drafted up as a lump-sum maintenance payment paid out in terms, is what it was.

Q. Okay. And it doesn't say lump sum anywhere; does it ...?

A. Well, I don't know. I'll have to look and see.

Q. While you're looking, isn't it true ... that you specifically called it periodic rather than lump sum?

A. The language "periodic" is in this agreement.

We also note that the Agreement refers to the obligation as "maintenance" which, according to *Cates,* proceeds from the need for reasonable support by one spouse from the other after the disruption of the marriage. *Cates,* 819 S.W.2d at 734.

Mary's argument seems to be that the maintenance obligation in the instant case qualifies as an exception to the strict application of § 452.370.2 based on the *Doerflinger* case because it was "contractual" and "in gross." We believe this misconstrues the *Cates* opinion. As indicated above, *Cates* makes it clear that the relevant inquiry is whether the obligation is to provide for the support of the payee and thus constitutes "maintenance." Whether it is "contractual" is not determinative. The *Cates* court held that § 452.370.2 applies to "statutory maintenance" which includes both contractual and decretal maintenance. *Cates,* 819 S.W.2d at 737. While *Cates* stands for the proposition that "maintenance in gross" is not recognized under the statutes relating to dissolution actions, it specifically held that an award of monthly payments for a definite period of time (such as in the instant case) could qualify as statutory maintenance. It also held that such payments not-yet-due [3] could

---

**3.** In the instant case there had been no default

authorizing acceleration of the remaining pay-

be considered as future maintenance payments subject to termination under § 452.-370.2 if the agreement and decree were silent on the effect of the payee's remarriage.

■■■ The trial court in the instant case obviously considered the *Cates* opinion in entering the subject order. No findings of fact and conclusions of law were made, and the record indicates none were requested by the parties. If not so requested, all fact issues are considered to have been determined in accordance with the result reached. *Halbrook v. Halbrook*, 557 S.W.2d 45, 46 (Mo.App.1977); Rule 73.-01(a)(2).[4] We must assume, therefore, based upon the evidence presented, that the trial court found the maintenance award in the instant case was intended for the economic needs of Mary and that the remaining amounts were not yet due and payable at the time of the remarriage. Under *Cates*, the future obligation under such an award would be terminated by § 452.-370.2 because of the failure of the Agreement or decree to specifically provide that it survived Mary's remarriage.

■■■ Our review of this point is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), whereby the trial court's order is to be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *See also Lemon v. Lemon*, 819 S.W.2d 94, 96 (Mo.App.1991). Under this standard of review, we are unable to conclude that the trial court erroneously applied the *Cates* decision as argued by Mary. Point I is, therefore, denied.

In her second point, Mary contends the Agreement was ambiguous as to whether William's obligation to pay maintenance would continue beyond remarriage and that the trial court's order sustaining the motion to quash was against the weight of the evidence concerning the intent of the parties on that issue. She places considerable

emphasis on the case of *LaBarge v. Berndsen*, 681 S.W.2d 441 (Mo. banc 1984), where the court found an ambiguity in a separation agreement and dissolution decree which did not mention the effects of remarriage and provided maintenance for the wife "for as long as she shall live." The *LaBarge* court authorized the taking of extrinsic evidence to determine the intent of the parties concerning the effect of remarriage on future maintenance payments.

The *LaBarge* case no longer provides a vehicle to establish the intent of the parties so as to avoid the effects of § 452.370.2. Our Supreme Court has recently said in *Glenn v. Snider*, 852 S.W.2d 841 (1993):

In *Cates*, however, this Court tacitly rejected the rationale of *LaBarge* by holding that an agreement that is silent on the issue of remarriage is not ambiguous. *Cates* at 737. In other words, where the decree and agreement are silent, there is nothing to rebut the statutory presumption of termination. To the extent that *LaBarge* holds otherwise, it is overruled.

The conclusion in *Cates* that the statute should operate to terminate maintenance payments on remarriage where the decree and agreement are silent does not apply retroactively to decrees and separation agreements entered prior to the *Cates* opinion. *Cates*, 819 S.W.2d at 738. Instead, the proper course is to determine whether the parties intended for the payments to continue past remarriage not because of any ambiguity in the decree or agreement (as *LaBarge* would suggest), but, as stated in *Cates*, because of the parties' possible reliance on the recognition of awards of "maintenance in gross," in *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983).

*Glenn v. Snider*, at 843.

As indicated above, the inquiry is whether the parties intended the maintenance payments to be for spousal support as opposed to some purpose outside § 452.335. Here, there was evidence to support a finding that it was for spousal support (and

---

ments, under the agreement and decree, prior to Mary's remarriage.

4. All references to rules are to Missouri Rules of Court, V.A.M.R.

thus would terminate on remarriage in the absence of contrary provisions in the Agreement and decree), and we must consider, from the court's order, that it made such a finding.

 Mary argues that we should set aside the trial court's order because it is against the weight of the evidence. We are constrained to set aside a judgment on that basis with caution and with a firm belief that the order is wrong. *Murphy v. Carron,* 536 S.W.2d at 32. "Weight of the evidence" means its weight in probative value, not the quantity or amount thereof, and it is not determined by mathematics but depends on the effect in inducing belief. *In re Marriage of Davault,* 636 S.W.2d 422, 424 (Mo.App.1982). Due regard to the opportunity of the trial court to judge the credibility of witnesses is required. Rule 73.01(c)(2). Under this standard, we are unable to say, with a firm belief, that the trial court was wrong in holding, under the standards enunciated in the *Cates* opinion, that § 452.370.2 had the effect of terminating the maintenance obligation upon Mary's remarriage. Point II is, therefore, denied.

Based on the authorities discussed above, we believe we are required to and do, therefore, affirm the trial court's order.

PREWITT and FLANIGAN, JJ., concur.