Eldon Ray SMITH, Jr., Respondent,

v.

Betty Lou LOCKWOOD, Appellant.

No. WD 50762.

Missouri Court of Appeals,
Western District.

Oct. 3, 1995.

Dan J. Pingelton, Columbia, for appellant.

John L. Roark, Julie E. Figg, Columbia, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

BERREY, Presiding Judge.

The parties hereto were granted a dissolution of marriage on December 2, 1985, by the Boone County Circuit Court. The decree of dissolution incorporated a separation agreement entered into by the parties on November 20, 1985. Paragraph 7 of the separation agreement expressly stated that respondent's

obligation to pay maintenance would "continue during the lifetime of Wife or until her remarriage, whichever shall first occur."

Respondent paid appellant $425.00 each month from December of 1985, through June of 1993. The record reveals that appellant married John Lockwood in August of 1991. Appellant did not disclose to respondent the fact of her remarriage, and yet she continued to accept the support payments sent to her by respondent.

According to respondent, he ceased making the monthly maintenance payments in July of 1993 after he first "heard rumors" that appellant may have remarried out-of-state. Thereafter, respondent and his counsel endeavored for several months to determine whether appellant had, in fact, remarried. The record contains affidavits and several letters reflecting respondent's attempts to ascertain appellant's marital status. Eventually, on August 12, 1993, appellant's lawyer wrote to respondent's lawyer indicating that appellant "has remarried and will accept no further maintenance from Mr. Smith." Respondent's lawyer replied by letter dated August 30, 1993. In this letter, respondent's lawyer asked for information regarding *when* appellant had remarried and requested repayment of all sums paid from and after the date of her remarriage. Thereafter, on November 8, 1993, appellant's counsel wrote to respondent's counsel indicating that appellant "has absolutely no assets to use to make any payments to Mr. Smith." This letter mentioned voluntary property exchanges the parties had recently made and the fact that respondent had been able to use the maintenance payments as deductions on his taxes. The letter concluded by stating that appellant "does not wish to be sued over this matter; however, she is unable to make any payments to [respondent.]"

Respondent filed his Petition on January 12, 1994, seeking return of money had and received.[1] Appellant filed her Answer on

1. Respondent's Petition also contained a Count II seeking recovery based on an alternative claim of fraud. The judgment entered in respondent's favor, although designated final for purposes of appeal, dealt only with Count I. Appellant's

contention that the judgment is therefore non-appealable was raised in her Motion to Amend Judgment and decided by the trial court adversely to appellant. However, respondent has dismissed Count II without prejudice "[t]o eliminate

February 22, 1994, alleging for the first time as an affirmative defense that the intent of the parties' separation agreement was to compel respondent's maintenance obligations until promissory notes on the marital residence and appellant's car were satisfied. On October 17, 1994, respondent filed his Motion for Partial Summary Judgment on Count I. Attached thereto was the parties' Decree of Dissolution (which included the incorporated separation agreement as executed by the parties), interrogatory answers filed by appellant and a copy of appellant's marriage license evidencing her remarriage to John Lockwood. Also attached to the motion was an affidavit by respondent and an affidavit by respondent's lawyer to which was attached as Exhibits the various letters referenced above regarding respondent's attempts to determine appellant's marital status.

Appellant filed her Reply in Opposition to respondent's motion for summary judgment on November 14, 1994, alleging the separation agreement is ambiguous as to when respondent's maintenance obligation should terminate. On December 27, 1994, the trial court granted respondent's motion for summary judgment against appellant for repayment of the amounts he had overpaid because of appellant's remarriage.

Appellant alleges two points of trial court error. She first contends that the language of the parties' separation agreement was ambiguous as to whether respondent's maintenance obligation was intended to continue after her remarriage. Next, she argues that if the agreement is not ambiguous, it should have been construed to require maintenance payments until the marital debts were paid. We will address both Points together.

Pursuant to Rule 74.04(c)(3), a summary judgment is proper when a review of the motion and response thereto demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

■ When it is demonstrated that there is no genuine issue of material fact, the adverse party must set forth specific facts in his response showing the existence of a genuine

any concern regarding finality for purposes of

issue for trial. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.* at 382. Where the "genuine issue" raised by the non-movant is argumentative, imaginary or frivolous, summary judgment is proper. *Id.*

■ In this case, we are faced with construing paragraph 7 of the parties' separation agreement. The first sentence of the disputed paragraph states that: "The Husband agrees to pay to the Wife *a monthly support payment for her maintenance* in the amount of $425 per month on the 5th day of each month in advance, commencing with the month of December, 1985." The next sentence provides that: "Said maintenance payments of $425 per month *shall continue in said amount* for each month thereafter until the Husband has made all payments due on the [marital residence and appellant's car]." The next several sentences provide a formula for calculating the *amount* of the "monthly support payments" once the marital debts are paid in full. The final sentence is then very specific. It states: "Said support payments shall continue during the lifetime of the Wife or until her remarriage, whichever shall first occur."

■ The use of unequivocal terms which are plain and clear requires us to enforce the contract as written. *Smith v. Mann, Poger & Wittner, P.C.*, 882 S.W.2d 164, 167 (Mo. App.1994). Here, the first sentence reflects respondent's agreement to pay appellant a monthly "support payment for her maintenance." The last sentence reflects the parties' intent that the "support payments" continue for the lifetime of appellant "or until her remarriage." The several sentences contained between the first and the last set forth the formula for calculating *the amount* of the monthly support payments. We fail to see the ambiguity alleged by appellant.

While more careful draftsmanship might have eliminated any question, the agreement as written clearly indicates the parties' intent that respondent's obligation to pay mainte-

appeal."

nance would cease upon appellant's remarriage. Appellant isolates certain sentences to advance her contention that the support payments were intended to continue beyond her remarriage. Specifically, she takes the second sentence out of the context of the whole paragraph to argue that respondent's obligation was to continue beyond her remarriage until the debts for the marital residence and appellant's car were paid in full. However, the subject sentence provides only that the "maintenance payments of $425 per month *shall continue in said amount* . . . until the Husband has made all payments due on the [marital residence and appellant's car]." The language is clear. It is not the respondent's *obligation* that was to continue until the marital debts were satisfied in full, but rather the *amount* of $425.00 per month.

Moreover, even if we assume ambiguity, the pleadings and correspondence contained in the record demonstrate that this was the true *intent of the parties. Not only did* appellant fail to disclose to respondent the fact of her remarriage, but, once her remarriage became known, appellant recognized the liability created by her nondisclosure and continued acceptance of support payments. Appellant's counsel wrote a letter to respondent's counsel admitting that appellant did not have assets from which to repay respondent and further suggesting that appellant did not want to be sued. We cannot accept appellant's attempt to create ambiguity in the settlement agreement where none, in fact, exists.

■ The dissolution decree in this case was entered December 2, 1985, and § 452.370.2, RSMo.Supp.1984, applies.[2] This section states that "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." Section 452.370.2 therefore creates a rebuttable presumption that the obligation to pay statutory maintenance terminates at the death of either party or upon the remarriage of the person receiving maintenance.

"The statutory presumption is rebutted by an agreement in writing that the obligation to pay statutory maintenance extends beyond remarriage or death." *Cates v. Cates,* 819 S.W.2d 731, 734 (Mo. banc 1991). According to *Cates,* the presumption is that the need for maintenance "terminates upon remarriage absent a contrary written declaration by the court or the parties." *Id.* at 736. In *Cates,* the Missouri Supreme Court searched the dissolution decree and the parties' separation agreement but found no language in either document *expressly* extending the former husband's obligation to continue maintenance payments beyond the former wife's remarriage. *Id.* (emphasis in original). The separation agreement approved and incorporated in the *Cates* decree stated in pertinent part:

> Husband shall pay to Wife, as maintenance in gross, the sum of Seven Thousand Eight Hundred ($7,800.00) Dollars, payable at the rate of Three Hundred Twenty Five ($325.00) Dollars per month . . . .

The court first determined that the maintenance award agreed to by the parties constituted "statutory maintenance" even though payable "in gross." *Id.* at 735. Thus, although the agreement obviously called for a lump sum settlement payable in monthly installments, our Supreme Court held that there was no express agreement in writing between the parties to extend the obligation to pay the future statutory maintenance payments beyond the former wife's remarriage. *Id.* at 737. The court then remanded the matter for a determination of the parties' intent as it ruled for the first time that maintenance "in gross" would no longer be recognized as a tool for providing economic sustenance which should be based upon need. *Id.* at 738.

Similarly, in this case, our review of the decree and separation agreement fails to reveal any express agreement in writing that respondent's monthly maintenance obligation would continue beyond appellant's remarriage. To the contrary, the last sentence of the disputed paragraph 7 clearly provides that respondent's maintenance obligation "shall continue during the lifetime of the Wife or until her remarriage, whichever shall

**2.** This provision was later renumbered as § 452.370.3, but the language remains the same.

first occur." This court will apply the clear meaning of the agreement as contained in the last sentence. We therefore are not persuaded to view this as a matter for construction.

■■■■ We review to determine whether the trial court erroneously interpreted the contract, finding it unambiguous as a matter of law. *Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A.,* 803 S.W.2d 23, 32 (Mo. banc 1991). The ambiguity of a contract is a question of law, and the court will make this determination. *Edgewater Health Care, Inc. v. Health Sys. Management, Inc.,* 752 S.W.2d 860, 865 (Mo.App.1988). A contract is not ambiguous merely because the parties differ on the interpretation to be given it. *Jake C. Byers, Inc. v. J.B.C. Inv.,* 834 S.W.2d 806, 816 (Mo.App.1992).

Appellant's reliance on *Miller v. Miller,* 784 S.W.2d 891 (Mo.App.1990), is misplaced. In *Miller,* the maintenance award was contractual for a specific number of years. In that case, the former husband agreed to pay maintenance "for fifteen (15) years." The former husband agreed to pay a specified amount without qualification as to subsequent or intervening events such as remarriage. This court held that the agreement therefore created a reasonable ambiguity as to whether the former husband's obligation was intended to continue beyond the former wife's remarriage. *Id.* at 893. Thus, resort to extrinsic evidence was permitted, and that evidence demonstrated that the maintenance payment was structured to coincide with the period of a mortgage loan that the parties had applied for during the period the settlement was under discussion. *Id.* There is no ambiguity in the case at hand, however. Unlike *Miller,* the parties to the instant case expressly agreed in writing that respondent's maintenance obligation would cease upon appellant's remarriage.

Appellant's reliance on *LaBarge v. Berndsen,* 681 S.W.2d 441 (Mo. banc 1984), is likewise misplaced. In *LaBarge,* the separation agreement incorporated into the dissolution decree provided for maintenance in a certain amount to be paid to the former wife "for as long as she shall live." The agreement also stated that maintenance was to continue af-

ter the death of the former husband and that the former husband would maintain insurance for the former wife "until such time as she may remarry." Under these circumstances, the court held that a reasonable ambiguity existed as to the parties' intent. *Id.* at 445. Thus, resort to extrinsic evidence was allowed, and the former husband's testimony during the dissolution proceeding convinced the court that the parties intended the maintenance obligation to continue beyond the former wife's remarriage. *Id.* at 444. During the dissolution hearing in that case, the former husband admitted that he understood his former wife would continue to receive maintenance even after any remarriage. *Id.* at 442.

The instant case is immediately distinguishable. First, as previously noted, the agreement specifically provides that respondent's maintenance obligation "shall continue during the lifetime of the Wife or until her remarriage." Unlike *LaBarge,* the agreement here is not silent on this "critical issue." Furthermore, respondent here clearly demonstrated his belief that the support obligation was intended to cease upon appellant's remarriage. And, appellant suggested a contrary intent only after respondent filed his petition seeking return of payments made in violation of the parties' agreement. As noted above, appellant, through her counsel, initially acknowledged her duty and inability to return the maintenance received subsequent to her remarriage.

Appellant remarried on August 14, 1991, and did not inform respondent. Respondent's obligation to pay maintenance terminated on that date pursuant to the parties' express agreement.

Affirmed.

All concur.